CHAS. E. CHANDLER, *as Treas'r, &c.,* v. JASPER REYNOLDS.

MUNICIPAL BONDS, *In Aid of Bridges; Division of Township, or County.*
Where a territory is detached from a county or township, the act of the
legislature of 1873 relating to "taxation on the change of boundary
lines," authorizes the taxation of said detached territory to pay prior
bonded indebtedness of such county or township only in cases where the
bonds were both "authorized and issued" "previous to the detachment
of said territory."

*Error from Pottawatomie District Court.*

INJUNCTION brought by *Reynolds* against *Chandler* as
county treasurer. All the facts appear in the opinion. A
perpetual injunction was decreed by the district court, and
the county treasurer brings the case here on error.

*John Martin,* for plaintiff in error.

*Hick & Reed,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action to perpetually enjoin
the collection of a certain tax. The facts of the case are
substantially as follows: On the 1st of August 1871, at an
election held for that purpose the electors of St. Marys town-
ship voted to issue $42,000 of the bonds of said township to
build a bridge across the Kansas river. According to the
election proclamation, and the order of the township officers
submitting the question to a vote, the bonds were to be issued
to the person or company building the bridge, in sums of
$100 each, bearing ten per cent. interest, the interest payable
annually at the township treasurer's office; they were to run
twenty years, and were not to be issued until the bridge was
completed. On the 25th of said August, the King Wrought-
Iron Bridge Manufactory and Iron Works, a corporation,
(which for convenience we will call the Bridge Company,)
entered into a contract with the township officers to furnish
all the materials and build the bridge for $39,100 in the

17—19 KAS.

bonds of St. Marys township at par; the bridge to be completed by the 25th of December 1871, which time was afterward extended by agreement to the 1st of February 1872; and it was completed and accepted by the township officers on the 16th of said February. On the 11th of September 1871, thirty-six square miles of the territory of St. Marys township, including the land of the defendant in error, were duly detached therefrom by the board of county commissioners, and formed into Emmett township, leaving about thirty-six square miles in St. Marys township.

On the 4th of January 1872, the treasurer and clerk of St. Marys township made out, signed and delivered to the Bridge Company $40,000 of the bonds of said township. In exchange for $900 of said bonds they took the Bridge Company's note for that amount. Each of said bonds was for $100, payable in ten years, bearing ten per cent. interest, payable in New York, and dated August 1st, 1871. On the 8th of January 1872, and while the said $40,000 of bonds were outstanding, the said township officers, at Topeka, Kansas, made out, executed and delivered to the said Bridge Company $40,000 more of the bonds of St. Marys township, each bond in the sum of $1,000, payable in twenty years, bearing ten per cent. interest from date, and dated back to the first day of August 1871, with interest coupons attached, the interest payable semi-annually in New York; and the Bridge Company agreed to return within fifteen days, and did return to the said township officers fifteen days thereafter, the first-mentioned bonds, delivered on the 4th of January, and the same were destroyed. A tax of 11½ mills on the dollar for the year 1873 was levied on the land of the defendant in error and other lands situated in Emmett township, to pay interest on the last-mentioned $40,000 of the bonds of St. Marys township, issued on the 8th of January 1872. Said tax was levied exclusively on real estate in Emmett township, notwithstanding there was and is personal property in said township liable to taxation, and taxed therein for other purposes, amounting to over $30,000 in value. This action was

commenced on the 9th of January 1874, in the district court of Pottawatomie county, by defendant in error, to enjoin the collection of this tax. It was tried at the August Term 1874, of said court, upon an agreed statement of facts, substantially as above, and judgment was rendered for the defendant in error (plaintiff below,) declaring the tax illegal, and perpetually enjoining its collection; and the defendant below as plaintiff in error now brings the case to this court.

We shall assume that said bonds are valid, and that they are binding obligations upon St. Marys township; and with this assumption, is said tax legal and valid? According to the decision rendered in the case of *Comm'rs of Sedgwick County v. Bunker*, 16 Kas. 498, 503, it is not. As will be perceived from the foregoing facts, said bridge was not completed, nor were said bonds due or issued, until some time after said Emmett township was separated from St. Marys township and duly organized; and therefore, according to said decision, no taxes can be imposed on any property situated in Emmett township, by virtue merely of the act of the legislature of 1873, "relating to taxation on the change of boundary lines," (laws of 1873, page 267,) to pay anything that may be due on said bonds. But counsel for plaintiffs in error desires us to reconsider that decision. He claims that the legislature not only had the power to pass the act which they did pass, which we admit, (*Comm'rs of Ottawa Co. v. Nelson*, just decided, *ante*, 234,) but that the act actually applies to this case so as to make said tax legal and valid. A portion of his argument reads as follows:

"In order to illustrate the operations of this act under a theory of construction different from the one now insisted upon by me, take this case: On the first of August 1871, an election was duly held in St. Marys township for the purpose of determining whether the officers of that township should be authorized to contract for the construction of a bridge across the Kansas river at some point in the township, and issue the bonds of the township in payment therefor. The election resulted in favor of building the bridge and issuing the bonds; and in pursuance of the authority thus granted, the township officers did, on the 25th of August 1871, duly

enter into a contract for the construction of the bridge and for issuing the bonds. Now this proceeding created a liability to pay these bonds. It made a debt against all the territory that then constituted the territory of St. Marys township; and on the 25th of August, when this liability was incurred, a very large proportion of the territory now included in the townships of Belvue and Emmett constituted a part of the township of St. Marys. So we find that this debt was created by the action of all the people then included in St. Marys township. It was created for the benefit of all the people and property in that township, as then constituted; not only this, but the debt was so contracted upon the faith of the value of all the property in the township as then constituted. It is unquestionably true, that the people and the property now included in that portion of the townships of Belvue and Emmett were equally benefited by the building of the bridge as the remainder of the old township. This being so, it is clear that this detached territory ought to bear its share of the burden imposed in obtaining that benefit, and especially so when that burden was imposed by the action of those who were then residents and property-owners on such detached territory. Good conscience and equity require such a construction of this statute as will fairly apportion this burden so voluntarily assumed; and the legislature undoubtedly intended that the law should be so understood and enforced. It would be a gross wrong to the old township, and a glaring outrage upon public creditors, to establish by statute or judicial decision the theory that the inhabitants of a part of a township may voluntarily assist in contracting debts or incur obligations of this kind for their own benefit, and so soon as the burden becomes onerous to discharge their property from this self-imposed liability by being cut off from the old township, thus imposing the whole of the burden upon the old territory and property, and without the assumption of any corresponding obligations of the new township to which it may be attached. This would be grossly inequitable and unjust, and the legislature cannot be presumed to have intended the establishment of such a harsh and unfair rule."

The foregoing would be a good argument to present to the legislature; and, if the terms of the statute were really doubtful or ambiguous, it would be a good argument to present to us. The inequity of the law as it is, and the equity of such a law as the counsel would have this statute to be,

are ably set forth in the foregoing argument. But we do not consider the terms of said statute as doubtful or ambiguous. They clearly do not apply to the present case so as to make said tax valid. Where territory is detached from a county, or township, said statute would authorize the taxing of said detached territory to pay prior bonded indebtedness of such county or township only in cases "wherein any bonds shall have been *previous* to such change of boundary lines legally authorized *and issued.*" That is, the detached territory is not liable for any portion of such bonded indebtedness unless the bonds were both "authorized and issued" "previous to" the change of boundary lines.

Precisely the same legal questions are involved in the case of Charles E. Chandler, plaintiff in error, v. Alfred E. Travis, defendant in error, (now submitted to us,) as are involved in this case; and therefore this opinion will be sufficient for both cases.

The judgments of the court below in both cases will be affirmed.

All the Justices concurring.