R. A. HURT, *Treasurer, &c., et al.,* v. ALEXANDER HAMIL-
TON, *et al.*

1. BRIDGE BONDS; *Limit of Levy of Taxes in Detached Territory.* An elec-
   tion was held in the township of Neosho Falls, under the provisions of
   ch. 33, Laws of 1870, on April 21st, 1870, to obtain the consent of the
   voters to issue bonds for the purpose of building a bridge. The notice
   of the election and the ballots used thereat showed the proposition to
   be, whether the township should issue bonds in an amount not to exceed
   ten per cent. of the *assessed* valuation of the township. The taxable
   property of the township was $130,000, as shown by the assessment of
   1869, and $203,000 by the assessment of 1870, which was in progress at
   the time of the election, but not completed under the law until in July,
   1870, and after the issuance of the bonds voted for. *Held,* That the
   valuation shown by the assessment-roll of 1869 controlled, and the
   issue of bonds authorized by the vote of the electors was limited to
   $13,000.

2. LIEN OF BONDS, *Measure of.* Under the provisions of ch. 142, Laws
   1873, only the bonds legally authorized and issued by a vote of the
   electors of a township are a lien on the territory detached from the
   township after the bonds are authorized and issued; and where there is
   an excessive or over-issue of bonds before the division of the township,
   the detached territory is not liable for any portion of the bonds issued
   in excess of the authority conferred on the township officials by the
   vote of the electors.

### *Error from Woodson District Court.*

ACTION brought by *Hamilton,* for himself and others,
against *Hurt,* as treasurer of Woodson county, and the town-
ship of Neosho Falls, to enjoin the collection of a certain tax.
The nature of the action, and the facts, appear in the opinion.
Trial by the court upon an agreed statement of facts, at the
June Term, 1880, and judgment for the plaintiffs. The de-
fendants bring the case here.

*H. D. Dickson,* and *Graves & Manchester,* for plaintiffs in
error.

*W. H. Slavens,* and *Calcs & Keplinger,* for defendants in
error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought in the district court of Woodson county, by Alexander Hamilton, appearing for himself and others, to enjoin the collection of a tax levied for the purpose of paying certain bridge bonds. The issues were submitted to the court upon the following agreed statement of facts:

"1. The plaintiff, Alexander Hamilton, is a citizen of said county, and the owner of the real estate of which he is in the petition alleged to be the owner.

"2. That defendant, R. A. Hurt, is treasurer of said county, and the tax-rolls thereof for the year 1879 are in his hands for the collection of the taxes appearing thereon; that said tax-rolls contain a tax of twelve and one-half mills on each one hundred dollars of valuation against the said lands of the plaintiff; that said tax was levied by the officers of said Neosho Falls township to pay the interest and create a sinking fund for the final payment of certain bonds issued by the said township in the month of July, 1870, to Mills & Smith, of Topeka, Kansas, for the purpose of constructing a bridge across the Neosho river in said township; that said bonds were issued under an act entitled 'An act to authorize municipal townships to issue bonds,' being chapter 33 of the Laws of 1870, state of Kansas.

"3. That said bridge was constructed by Mills & Smith, and said bonds were issued and delivered by said township directly to the said Mills & Smith in payment therefor, according to agreement between them and said township.

"4. That at the time of the building of said bridge and at the time of the issuing and delivering of the bonds as aforesaid, the said real estate of the plaintiff formed a part of the said township of Neosho Falls, and had formed such part of said township during the year 1868, and continued to form such part thereof continuously thereafter until April 21, 1871; that on the said 21st day of April, 1871, the said real estate belonging to the plaintiff as aforesaid, together with a large tract of other real estate, was detached from said township of Neosho Falls, and with other territory was formed into another township, to wit, the township of Everett.

"5. That the bridge for the payment of which the bonds were issued has been ever since its construction, and is now, within the said township of Neosho Falls as it now exists.

"6. That, except as hereinafter stated, the bonds were issued by the township of Neosho Falls in pursuance of a vote of the electors of said township authorizing the same, given at an election held therein on the 21st day of April, 1870, in pursuance, except as herein stated, of the provisions of an act entitled 'An act to authorize municipal townships to issue bonds,' approved March 20, 1870, being chapter 33 of the laws of 1870 of the state of Kansas.

"7. That the amount of the bonds so issued as aforesaid was twenty-three thousand dollars; that at the time of voting for said bonds the taxable property of Neosho Falls township was one hundred and thirty thousand dollars ($130,000), as shown by the assessment of 1869, and the value of said property was two hundred and three thousand dollars ($203,000), as shown by the assessment of 1870.

"8. That said bonds are now outstanding and unpaid, and in the hands of innocent holders, for value; that in the United States circuit court for the district of Kansas, in an action therein pending wherein one C. A. Miller, a holder of a portion of said bonds, was plaintiff, and said Neosho Falls township was defendant, and wherein the validity or invalidity of said bonds by reason of an over-issue of said bonds over and above the amount limited by said act, was litigated, the bonds were in said action on the 7th day of December, 1875, adjudged to be valid; that said bridge was completed before the said real estate belonging to the said plaintiff was detached from the township of Neosho Falls.

"9. That the said levy is the same in amount as is levied on all the property within the said township of Neosho Falls as it now exists, and is not unreasonable or excessive.

"10. That the notice of the election under which said bonds were issued and the ballots used thereat showed the proposition submitted to be, whether or not Neosho Falls township should issue bonds in an amount not to exceed ten per cent. of the assessed valuation of the township, and no definite amount of bonds was specified either in said notice or ballots; that since the said lands were detached from said Neosho Falls township neither the said township of Everett nor the owners of the said detached lands have ever voluntarily paid any taxes levied on said lands to pay the interest on said bonds or to create a sinking fund for the final redemption of said bonds.

"11. The said bridge was in 1870 made a toll bridge, and remained so until the summer of 1873, and the said township

of Neosho Falls collected large sums as tolls, from which the plaintiff or other owners of said detached lands never derived any benefit, except that all of said moneys so received were, after defraying the expenses of maintaining said bridge, applied to the payment of the interest on said bonds."

At the June term of the court for 1880, upon the agreed facts, the court found that only thirteen thousand dollars of the twenty-three thousand dollars of bonds were legally authorized and issued by a vote of the electors of Neosho Falls township, and further found that the real estate belonging to the plaintiff Alexander Hamilton from the year 1868, continuously until April 21, 1871, was a part of the township of Neosho Falls, and only liable to be taxed for its proportionate part of the principal and interest of thirteen thousand dollars of the bonds. Judgment was entered that the temporary injunction granted on December 26, 1879, be dissolved, so far as the same applied to the real estate described in the petition, to so much of the levy as was the proper and due proportion of the principal and interest of $13,000 of the bonds, viz.: the sum of seven mills on each one hundred dollars of valuation thereof, and that the temporary injunction be made perpetual, so far as the same related to the remainder of the levy, to wit: the sum of five and one-half mills on each one hundred dollars of valuation thereof.

Counsel for plaintiff in error contend that, as the whole $23,000 of the bridge bonds is collectible, within the decisions of the United States courts, (*Miller v. Neosho Falls Township*, U. S. Ct. Ct., District of Kansas; *Marcy v. Township of Oswego*, 92 U. S. 637; *Town of Orleans v. Platt*, 7 Reporter, 737,) so far as Neosho Falls township is concerned, it follows that they were "legally authorized and issued by a vote of the electors" of the township; and therefore that the territory detached from Neosho Falls township on April 21, 1871, is liable for its proportionate share of the principal and interest of all the bonds under the terms of ch. 142, Laws 1873. The argument is plausible, but unsound in this: The decision of the United States courts affirming the validity of these bonds and others of like class, in the hands of *bona fide*

holders, do not rest upon the theory that the bonds were "legally authorized and issued" in accordance with a vote of the electors, but, although issued in disregard of the terms of submission and against the express prohibition of the statute, the recitals in the bonds that the requirements of the legislative act have been complied with, are conclusive. This on the ground that the existence of sufficient taxable property in the township to warrant the issue was, by the statute, referred to the inquiry and determination of the officers of the township, and as they were all determined before the bonds came into the hands of innocent holders, the purchasers were not bound to look beyond the act of the legislature and the recitals which the bonds contained. These decisions go to the extent that if there exists any authority whatever to issue such bonds, no restrictions, limitations or conditions imposed by the legislature in the exercise of that authority can be made effectual, if they be disregarded by the officers of the townships, and such bonds reach the hands of innocent holders. Where territory is detached from a township, the statute of 1873 makes only those bonds a lien on the detached territory which have been legally authorized and issued by a vote of the electors. The assessment roll of 1869 showed that the assessed valuation of Neosho Falls township was $130,000; if the issue of bonds was limited to such valuation, then the officers of the township were authorized to issue only $13,000 of bonds under the provisions of ch. 33, Laws 1870; and all the bonds in excess were an over-issue, and wholly unauthorized by the vote of the electors. If this be true, then the detached territory is not liable for any bonds but the $13,000.

Counsel here intervene and say, that conceding the separated territory is not liable for its share of the whole $23,000 of bonds, yet, under the proposition submitted to the voters, the officers ought to have taken the assessment of 1870, which valued the taxable property of the township at $203,000, as a guide, and therefore $20,300 of the bonds were duly authorized, and the territory separated in 1871 is liable for its portion of that amount of the bonded indebtedness. Not so.

The vote was taken April 21st, 1870; the proposition to the electors limited the issue to an amount not to exceed ten per cent. of the assessed valuation of the township. At that time the known valuation of the taxable property was $130,-000 by the last assessment; it was also, doubtlessly within the general knowledge of the parties submitting the proposition and the electors, that the assessed valuation had not decreased since 1869. The amount of bonds to be issued upon that valuation could be definitely ascertained. If the assessment of 1870 was to determine the amount of the issue, the officers had no positive standard of valuation to act upon; they were authorized to act in the dark. The assessment for that year was in progress on the election, but not completed until after the bonds were issued. The county board of equalization of Woodson county, under the law then in force, could not meet till the first Monday of July, yet the bonds were issued July 1st. Furthermore, the language of the proposition was not to direct the township officers to issue an amount of bonds not greater than ten per cent. of the then taxable property of the township, but was limited to ten per cent. of the *assessed valuation* of the township; there then existed no *assessed valuation* at all applicable, but the previous assessment of 1869. In our opinion, the district court committed no error in holding that the voters intended to limit the amount of the issue of bonds to ten per cent. of the valuation of the taxable property of the township, as evidenced by the assessment roll of 1869, and that the liability of the detached property was confined to its proportionate share of the $13,000 of bonds and interest due thereon. The over-issue of $10,000 was not, it seems to us, authorized by the vote of the electors, and was issued and placed upon the market in such a manner as to reach the hands of innocent holders in total disregard of the limitation imposed by the electors. The action of the township officials in the issuance of the bonds in controversy, is a good illustration of the evil effects of construing propositions like the one submitted April 21st, 1870, so as to permit the officials to merely

6 — 25 KAS.

guess as to the amount of the taxable property from which to compute the amount of bonds to be issued, rather than to confine them to the strict letter of the proposition, and thereby have some fixed standard, like a previous assessed valuation, to direct them in the exercise of their authority. Here, $23,000 of bonds were issued. Neither the assessment rolls of 1869 nor 1870 warranted such an amount. The officials, anxious to construe the proposition liberally, satisfied their consciences, we suppose, of the legality of their proceedings, by guessing that as the assessment of 1870, while being taken in May and June, was $203,000, in July it might be $230,-000; and as the bonds were issued on the latter date, the vote was for $23,000, and not for a less sum. No such elastic construction ought to be given to the proposition submitted, if a more specific and limited one is reasonable. We think the construction of the district court both reasonable and more in accordance with the intent of the submission.

The writer is not satisfied with the correctness or logic of the reasons advanced by the majority of the members of the supreme court of the United States in the decisions referred to, and believes the rights and interests of all parties, property-owners and honest bond dealers, would be more justly conserved if it had been decided by the supreme legal tribunal of the land, that purchasers, before buying such bonds, are bound at their peril, to ascertain from the public records the amount of the issue of the bonds and the value of the taxable property within the township.

The other questions in this case are disposed of under the decisions in *Comm'rs of Sedgwick Co. v. Bunker*, 16 Kas. 498; and *Chandler v. Reynolds*, 19 Kas. 249.

The judgment of the district court will be affirmed.

All the Justices concurring.