The opinion of the court was delivered by
Brewer, J.:
This was an action to restrain the issue of $27,000 of bonds of Center township, in Woodson county, to the St. L., Ft. S. & Wichita railroad company. The facts are these: Upon a proper petition, the county commissioners ordered an election in said township on the' question of subscribing to the stock of said railroad in the sum of $27,000, and paying therefor in township bonds. The vote was duly had, and a majority voted in favor of the subscription. All the proceedings were legal and regular, except as hereinafter stated. At the time of the vote the last completed assessment of the taxable property of said township was $215,602. This was the assessment for the year 1880. Before the commencement of this action, and before the railroad company had acquired any right to any bonds under the vote by the completion of their road through the township, and before any attempt on the part of the commissioners to issue the bonds, the assessment for 1881 had been completed, and amounted to $227,711. Under the limitations of the statute, the $27,000 voted exceeded the amount which the township might lawfully issue upon the basis of the assessment of 1880 by the sum of $614.45. Upon the basis of the assessment of 1881, the whole $27,000 might lawfully issue. The district court held that the assessment of 1880 controlled, and enjoined the issue, of $614.45 of these bonds, and refused to enjoin the issue of the remainder, $26,385.55. The railroad company and the county commissioners took no exception to the ruling *316 of the district court, but the plaintiff excepted to the refusal to enjoin the issue of the $26,385.55, and brings the case here for review.
' Roivfarvaiid Three propositions are (made by counsel for plaintiff: First, it is insisted that the assessment of 1880 controlled, and that, as under it the township had voted to issue more bonds than it legally could, the vote was a nullity, and no power vested in the commissioners to issue any bonds; second, that, as the proposition submitted to the voters was to issue bond's in the denomination of five hundred dollars each, and as the sum which could legally be issued, to wit, the sum of $26,385.55, was not divisible into bonds of $500 each, the vote was a nullity, and no bonds could lawfully be issued; and third, that § 10 of the act under which the bonds were voted is unconstitutional, (see the case of Bank v. Barber, 24 Kas. 534,) yet being written in the act, must be presumed to have been considered by the voters of the township, and to have influenced their votes. Of these in their order: Assuming that the assessment of 1880 controlled, was the vote authorizing the issue of the $27,000 a nullity? We think not. The prohibition in the statute is on the issue of the bonds. -^s laD§uage “ No township sha.ll be allowed to issue more than,” etc., so that whatever amount the township may be willing to vote, and whatever amount they may by their vote authorize the commissioners to issue, the statute steps in and prescribes a limit beyond which the commissioners may not go. Reference is made to the case of Marcy v. The Township of Oswego, 92 U. S. 637, decided in the first instance in the circuit court by Mr. Justice Miller; and to the case of Hurt v. Hamilton, 25 Kas. 76, in which an opinion is expressed antagonistic to the views of the supreme court of the United States in the case just cited. In the former case, Mr. Justice Miller held that, because the township had voted to issue more bonds than it lawfully could under the statute, the whole series thus voted was void. The .supreme court of the United State reversed this ruling, and held them all valid, at least in the hands of bona fide holders. But a *317 marked distinction exists between the statute under which the bonds were voted in this case and that under which the bonds' in the Oswego case were voted. That statute provided, (Laws 1870, ch. 90, §1,) “that the amount of bonds voted by any township shall not be above such an amount,” etc. This, as heretofore stated, is; “No township shall be allowed to issue more than,” etc. But even in that case, notwithstanding the amount authorized by the vote was excessive, yet if in fact the authorities had only issued the amount the township might legally issue, it may well be doubted whether in the circuit •court the bonds would not have been held valid by Mr. Justice Miller, and of course there would be no question as to the •decision in the supreme court of the United States; but here the limitation is upon the issue, not upon the vote. However •excessive the authority apparently granted by the vote to the commissioners, that authority is good up to the statutory limit. The vote of the township was simply an authorization by a principal to its agent, and the agent may perform the act authorized, except so far as it is restrained by some provision of law. Generally speaking, a grant of excessive authority isgood up to the legal'limit, and an authorization to do more than can legally be done is void only as to the excess. Hence we conclude that the first and principal objection to the ruling of the district court cannot be sustained.
2. "Vote not null. The second objection does not seem to have much weight. The amount, the time, and the interest, are the matters of substance, and other matters are of minor importance. Doubtless the bonds up to the extent of $26,000 should be issued in sums of $500 each, but the fact that there re- . , 7 mams a small fraction which cannot be put in a bond of that amount does not invalidate the whole action. The mere form in which a small portion of this proposed indebtedness must be placed, does not go to the substance of the transaction, or enter into the real merits of the proposed contract between the railroad company and the township.
*318 may be issued, *317 Neither do we see any force in the last objection. It cannot be seriously contended that the invalidity of this section *318 renders the balance of the statute void. That is perfect and complete by itself, and does not depend at all upon the objectionable portion of this section. (Cooley's Const. Lim. 177 to 181.) The idea of counsel seems to be that in this § 10 there is presented an extra inducement to the voters of the township to incur this indebtedness; that but for such inducement the bonds would not have been voted, and as the inducement fails, the vote must also fail. Yet as all persons are presumed to know the law, the presumption of course is that the voters all knew that this section is unconstitutional, and were therefore uninfluenced in their action by this apparent inducement. Moreover, this court had, in the case of Bank v. Barber, cited, supra, already decided that a similar section in a kindred act is unconstitutional ; and it must be presumed that this fact was also known to the voters. It may be argued that this presumption of the knowledge of the invalidity of a statute, or of a knowledge of the rulings and decisions of this court, is a mere fiction of law, and that as a matter of fact the voters had no such knowledge. This is very possible; but it is almost equally probable that a large majority of the voters never read the statute under which the bonds were voted, and had no actual knowledge of the existence of this § 10, or of the inducement which it was supposed to.hold out. So that whether we rely upon presumptions of law or upon the probabilities of actual knowledge, it would not seem that this § 10 cuts any-real figure in the transaction. Obviously the township wanted the railroad, was willing to incur this indebtedness, and whether wisely or not it offered the inducement of its subscription to the railroad company for the sake of obtaining the railroad. Having made this offer, and the railroad company acting upon it and expending its money in the construction of its road, we see no legal reason for relieving the township of the obligation it thereby proffered to assume to the company. We s?e no error in the case, and the judgment of the district court must be affirmed.
All the Justices concurring.