# THE PEOPLE *ex rel.* Peoria and Rock Island R. R. Co.

*v.*

## PETER CLINE.

1. ' MUNICIPAL AID TO RAILROAD—*fraud and illegality in the call and election.* Where the charter of a railroad company authorized the call of a township election to determine whether the town should subscribe a certain sum to the capital stock of the company upon the petition of ten legal voters of the town, and it appeared that there were but ten names signed to such call, and that three of them were aliens and not voters, and that, at the election held under such call, three votes were cast in favor of the subscription by persons not entitled to vote, without which there was a majority of one vote against the proposition, and that these facts were known to the railroad company when they procured the supervisor to make the subscription and issue a part of the bonds of the town : *Held,* on application for a *mandamus* to compel the supervisor to issue and deliver the remaining bonds, the facts being admitted by demurrer to the return to the writ, that, on account of the fraud and illegality in the call and election, and the subscription, the company was not entitled to have the bonds issued and delivered, it being a party to the fraud.

2. SAME—*estoppel to question election.* In such a case, the township is not estopped by the act of its officers in canvassing the votes and declaring the result in favor of the subscription, and making the subscription and issuing a part of the bonds, to question the legality of the call or the result of the election, for the reason that the company had notice of the fraud before it complied with the conditions of the subscription or incurred liabilities on the faith of it.

3. SAME. Had the bonds been issued under such an election, and subscription had passed into the hands of an innocent holder, or had the subscription been made to the company, and it had no notice of the fraud, and it had incurred liability on the faith that the bonds would be issued, it may be that the township would have been estopped from impeaching the call or election for such fraud or illegality when called upon for its bonds.

4. TOWNSHIP ORGANIZATION—*duties of supervisor to defend suits.* The supervisor occupies the position of a qualified chief executive officer of his town, and when called upon as such officer to issue the bonds of the town, under an alleged election, and subscription to a railroad company, he has the right to controvert the legality of the demand and call for a judicial determination of the matter. He is the only person whose duty it is, by law, to attend to the defense of suits against his town. The supervisor,

and the duties cast upon him, constitute the only barrier between the un-just claimant and the tax payers of the town. He has no authority to compromise a claim against his town on his own motion.

5. SAME—*town clerk.* The town clerk has no such duties, his being of a ministerial character, and it seems that, when the supervisor, under an election, makes a subscription to a railroad and executes the bonds of the town in pursuance thereof, the town clerk has no authority to ques-tion the legality of the act or refuse to countersign them and make a record thereof, it not being his duty to defend the interests of his town.

6. MANDAMUS—*when it lies.* It is a general rule that *mandamus* will lie to compel a party to do an act only when it is his duty to do the act without it. And when a supervisor of a town refuses to do an act which in law and in fact ought not to be done, he is in no respect amenable to the law for such refusal; nor can he be compelled to do the act by *man-damus.*

APPEAL from the Circuit Court of Fulton county; the Hon. C. L. HIGBEE, Judge, presiding.

This was an application by the relator for a *mandamus* against appellee, supervisor of the town of Akron, in the county of Peoria, to compel him to execute and deliver $27,000 of the bonds of his town to the relator. The facts bearing on the points discussed appear in the opinion.

Messrs. INGERSOLL & MCCUNE, for the appellants.

Messrs. BURNS & BARNES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that relator was created a corporation by an act of the general assembly, approved March 7th, 1867; that the company has constructed the railroad from Peoria to Rock Island; that it passes through the town of Akron, in Peoria county; that, under the power conferred by the charter, the· question whether the town should subscribe $30,000 to the capital stock of the company was submitted to a vote of the citizens thereof. After canvassing the vote, it was found that

124 votes were cast in favor of subscription, and 122 against subscribing. There were some conditions annexed in the petition for the call, and in the notice given of the election, but it is conceded that they have been complied with by the company. The town clerk, on the 10th day of April, three days after the election, filed a certificate of the result of the same, in the office of the county clerk. After the result of the vote was declared, Wm. H. Wilson, the supervisor, prepared and executed bonds of the township to the amount of $3,000, in conformity with the terms on which they were voted, but the town clerk having refused to join in issuing them, he was compelled to attest them by *mandamus*, when they were delivered to the company. On being demanded of respondent, who has since been elected supervisor, he refused to issue the remaining $27,000 of bonds, and the company applied to the circuit court of Peoria county for a writ of *mandamus* to compel the supervisor to issue the same. Subsequently the venue was changed to Fulton county.

A return was made to the alternative writ, in which it is set up as a defense that the provision of the charter had not been observed, which only authorized the town clerk to call the election on the petition of ten legal voters of the town. It admits that a petition was filed, signed by ten residents of the town, but avers that a portion of them were not legal voters, being aliens and not naturalized, and as such, not entitled to vote under the constitution or laws of this State; that a majority of the legal votes cast at the election was not in favor of subscription, but, on the contrary, a majority was cast against subscription; that of those who were registered as voting in favor of subscription, there were three aliens, not naturalized, or in any manner legally entitled to vote at that or any other election held under the laws of this State; that these three votes were counted for subscription and entered into the canvass, and had they been rejected, as they should have been, the result would have shown a majority of one against subscription.

The return also contains this averment :

"And the respondent says that, at the time of making of said subscription to said capital stock as aforesaid, the said relator was notified and informed of the illegality of the petition to the clerk, and of the illegal voting at said election as aforesaid, and of the fact that the said township officers had not determined the length of time for which said bonds should run, and of the want of power in the said supervisor to make said subscription and issue said bonds. Nevertheless, the said supervisor of said township made said subscription as aforesaid, and said relator received the same, well knowing the lack of power and authority and the fraud aforesaid in said proceedings hereinbefore mentioned."

Relator interposed a demurrer to the return, which the circuit court overruled by a *pro forma* order and dismissed the petition, and relator brings the record to this court and assigns various errors.

On the argument several interesting questions are presented and discussed, but we propose only to consider that of the fraud in the petition for the call of the election and the fraudulent votes cast, by which it was declared that the subscription had carried. It is positively averred by the return, and admitted by the demurrer, that there was not ten legal voters of the town that petitioned for the call of the election, and that there were but 121 legal votes cast in favor of subscription, and that there were 122 against subscription, and that there were three fraudulent votes cast in favor of the proposition, which were counted. It is also averred that these facts were known to the company at the time the subscription was made, and this is admitted by the demurrer.

The statute requires that there shall be the names of ten legal voters of the town signed to the petition for the call of an election, whilst in this case there were ten names thus signed, but it is averred and admitted that two of the persons were not legal voters. This, then, was not in accordance with the statute, but was in violation of its requirements.

And the same is true of the three illegal votes cast in favor of subscription. The charter only authorizes such a subscription when a majority of the legal votes cast at the election shall be in favor of the same. Hence, the law was not complied with as to the requirement of the number of votes in favor of the measure. There was not a legal majority of the votes cast for subscription, and it should not have been made.

It is, however, urged that, notwithstanding there may have been a failure to comply with the statute in calling and holding the election, still the township is estopped by the canvass of the vote, the return to the county clerk, and the subscription made by the supervisor. Although this might be true had the bonds been issued, and in the hands of an innocent holder, or had the subscription been made without any notice of the fraud, and the company had incurred liability on the faith that the bonds would be issued, but here the company had notice of the fraud, and can not, therefore, say they are defrauded. Knowing the call and the election to have been illegal, the company can not claim that they received the subscription in good faith, or that they believed they could enforce it against the township. Having knowledge of the illegality of the election, they made themselves a party to the illegal transaction by receiving the subscription, and thereby were rendered incapable of compelling the issue of the bonds. These views were expressed in the case of *The People ex rel. v. The Board of Supervisors of Logan County,* ante, p. 374. That case governs this, and the judgment of the court below must be affirmed.

*Judgment affirmed.*

A petition for a rehearing having been presented, the following additional opinion was filed of the January term, 1873:

Per CURIAM: The counsel for the relator, in their application for a rehearing in this case, insist that it is governed by

the principle of the case of *Houston* v. *The People ex rel.* 55 Ill. 398, which was a *mandamus* against the town clerk of the same town, upon the relation of the same railroad company as in the case now before us, against the supervisor.

The distinction between the two cases is, to us, as obvious as that between the office of supervisor and that of town clerk. The latter is made, by statute, the custodian of the records, books and papers of the town, and to which his duties principally relate ; is authorized to administer oaths, make certificates for certain specified purposes, and certify copies of records, etc., which shall be evidence. Gross' Stat. 1869, 752.

The duty imposed upon the clerk by the relator's charter, is of the same character. When the bonds are issued by the supervisor and delivered to the relator, the clerk is required to attest them and make a record of the issuing of the same. Private Laws 1867, vol. 2, 662–3.

This was a mere ministerial act, the only preliminary to the performance of which was, that the supervisor had executed the bonds which the clerk was required to attest, and of which to make a record. The clerk is, in no sense, the chief representative of the town, nor were his functions prescribed as a check upon such chief officer. He had no more discretion to refuse to attest and make record of the issuing of these bonds, than he would have to refuse to administer the oath to a town officer on the ground that he was not eligible, or to record proceedings because, in his judgment, they were not regular.

The supervisor occupies an entirely different position. It is that of a qualified chief executive officer of the town, but whose duties are prescribed by law. While he is clothed with no power to bind the town by the exercise of his discretion in respect to the issuing of bonds to railroad companies, yet it is not his duty to issue them if the statute, authorizing their issuance, has not been complied with.

Towns are not devoted by law as helpless victims of every unjust claimant. They are clothed with the same rights of self-preservation, in respect to claims deemed to be unjust or illegal, as natural persons or private corporations. The first section of the act of 1861 declares that, "Whenever *any controversy* or cause of action shall exist between any towns of this State, and between any town and individual, *or corporation,* such proceedings shall be had either at law or equity for the purpose of trying and finally settling *such controversy,* and the same shall be conducted in the same manner, and the judgment or decree therein shall have the like effect as in other suits or proceedings of a similar kind between individuals and corporations." Gross' Stat. 755.

This section clearly contemplates and confers the right of a town to raise a controversy between itself and another town, or between itself and any individual or private corporation. Then the question arises, Who is to take the initiative—who is to bring on the controversy, in case where a claim is made against the town which ought to be made the subject of judicial investigation? Not the town clerk, in any case. But when the claim arises upon an alleged right on the part of the claimant to have the supervisor do a particular thing on behalf of the town, and the supervisor conceives that it is not his duty to do it, then he is necessarily clothed with the power to raise the controversy by refusing to do the act, and call for judicial determination of the matter. The fourth section of the act above referred to is as follows: "In all legal proceedings against the town, by name, the first process, and all other proceedings required to be served, shall be served on the supervisor of the town; and whenever any suit or proceeding shall be commenced, it shall be the duty of the supervisor to attend to the defense thereof, and lay before the electors of the town, at the first town meeting, a full statement of such suit or proceeding for their direction in regard to the defense thereof." Gross' Stat. 755.

Here, the requirement that all process shall be served upon the supervisor in all legal proceedings against the town, the specific duty upon him to attend to the defense thereof, and then make a full statement of the suit or proceeding to the next town meeting, presuppose not only an intimate connection on the part of the supervisor with all litigation against the town, but impose a high degree of responsibility in respect thereto. The supervisor, and the duties cast upon him, constitute the only substantial barrier between the unjust claimant and the tax payers of the town. He has no authority to compromise a claim of his own motion. His express duty is to attend to the defense when legal proceedings are instituted, and make a full statement thereof to the next town meeting for directions. His integrity and fidelity to duty are just as much involved when he is called upon to do an act on behalf of the town which, in fact, ought not to be done and he knows it, and he would be just as destitute of justification if he should do the act under such circumstances as he would to allow an unjust claim to go into judgment without making any defense. The only difference in the cases would be, that, in the latter case he would violate an *express;* and in the former an *implied,* duty.

When a supervisor refuses to do an act which, in law and fact, ought not to be done, he is in no respect amenable to the law for such refusal, nor can he be compelled to do the act by *mandamus.*

It is a general rule that *mandamus* will lie to compel a party to do an act only when it was his duty to do the act without it. *People* v. *Gilmer,* 5 Gilm. 242; *People* v. *Mayor of Chicago,* 51 Ill. 17.

In the case before us, the proceeding was against the supervisor by his name of office, the effect of which, and the act sought to be enforced, would be to bind the town. The supervisor was, therefore, under the statutory duty to attend to the defense of the proceeding and make a full statement of it

26—63D ILL.

to the next town meeting for directions. No such duty is, anywhere in the statute, imposed upon the town clerk.

If there was a want of power in the supervisor to issue the bonds, it was not his duty to issue, but to refuse to issue them. If a proceeding was instituted to compel him by *mandamus* to issue them, then a controversy arose which the town had a clear right to have brought to a final judicial settlement, the same as an individual or private corporation might. This right carries with it, as an incident, the right to set up any legitimate defense, and it is a legitimate defense to show that there was a want of power in the supervisor to issue the bonds, or fraudulent, illegal voting to which the relator was privy, by which the supposed majority was obtained.

The supervisor, or the town in his name, and through him, had the legal right to show in this way that it was not the duty of the supervisor to issue the bonds. All matters legally pertaining to such a defense, if set out with requisite certainty, were material, and to be regarded as well pleaded in the sense that a demurrer to the return would admit them to be true. The relator having demurred to a return setting up such matters, and permitted judgment to go against it on the demurrer, and then brought the record to this court, must abide the result of the ordinary rules of practice.

This court, after a very careful examination, was of the opinion that the matters set up were material, were admitted by the demurrer, afforded a complete defense to the remedy sought, and affirmed the judgment. Being still of that opinion, we can render no other judgment, and must deny the petition for a rehearing.

*Rehearing denied.*