THE CITY OF TOPEKA, *et al.*, v. JAMES GILLETT, *et al.*

1. CORPORATE POWERS—*Special Act Void.* Where an act of the legislature, attempting to confer corporate powers, is so special in its provisions that it can apply only to three certain cities, and cannot possibly at any time apply to any other corporation, public or private, it is unconstitutional and void, being in contravention of § 1, article 12 of the constitution, which provides that "the legislature shall pass no special act conferring corporate powers."

2. ———— *Judicial Notice.* For the purpose of construing a constitution or statute, courts may take judicial notice of everything which may affect the validity or meaning of such constitution or statute.

3. ACT, *When Special.* An act of the legislature may be special where it applies to many particular and existing persons or things, as well as where it applies to only one; and it may be special where it simply describes such particular persons or things so that they may be known, as well as where it gives their particular names or distinctive appellations.

4. ADDITION, *When Not Brought Within City Limits.* Where a supposed addition to a city of the first class has never been subdivided into lots, blocks, streets and alleys by the proprietors thereof, with any intention that it should become a part of the city; and no map or plat of such supposed addition has ever been made, acknowledged or filed in the office of the register of deeds by such proprietors, or with their consent, or by their authority; and such proprietors have never consented that such supposed addition should be made or should become a part of the city: *Held,* That an ordinance of the city defining the boundaries of the city, and including such supposed addition within its boundaries, does not, under § 8 of the first-class-city act, or under any other statute, bring such supposed addition within the boundaries of the city.

5. TAXES—*Collection Enjoined—No Estoppel.*   And where the city claims that such supposed addition is within the city limits, but such claim has at all times been disputed and resisted by the proprietors thereof, *held,* that such proprietors are not estopped from maintaining an action to enjoin the collection of a tax levied by the city upon the plaintiffs' property situated in such supposed addition.

*Error from Shawnee District Court.*

ACTION brought by *Gillett* and other tax-payers and residents of "Ritchie's Addition" to the city of Topeka, against *The City, The Board of Education* thereof, and *Bradford Miller,* as treasurer of Shawnee county, to enjoin the collection of certain taxes for 1883, levied by the city upon the plaintiffs' property situated in said addition, and claimed by them to be illegal and void.   February 14, 1884, the district court adjudged that Ritchie's Addition is not legally a part of the city of Topeka; that the taxes aforesaid are void, and that the collection thereof be perpetually enjoined.   The defendants bring the case to this court.   The opinion states the facts.

*A. B. Quinton,* and *J. B. Johnson,* for plaintiffs in error.

*Wm. P. Douthitt, C. M. Foster,* and *Waters & Ensminger,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced by James Gillett and other tax-payers and residents of what is called "Ritchie's Addition" to the city of Topeka, against the city and others, to enjoin the collection of certain taxes claimed to be illegal and void, and levied by the city upon the plaintiffs' property situated in such so-called addition.   It is admitted that if such so-called addition is a part of the city of Topeka, that the taxes attempted to be enjoined are legal and valid. Whether such so-called addition is a part of the city of Topeka, or not, depends upon other questions, the principal of which is whether chapter 73 of the Laws of 1875 is constitutional and valid, or not.   The act reads as follows:

"AN ACT supplemental to an act entitled 'An act to incorporate cities of the second class,' approved February twenty-eighth, eighteen hundred and seventy-two.

*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. The city council in their discretion may add from the territory adjacent to the city limits, as defined and existing at the date of the approval of this act, such additional territory as they may deem proper, and shall in every case have power to increase or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city: *Provided,* That before said city council shall add from the adjacent territory any additional territory to the city, and enlarge the limits thereof, the mayor of the city shall give twenty days' notice in some newspaper published in said city, or if no newspaper be published therein, then twenty days' notice in some newspaper of general circulation in the city, of the time and place of meeting of the city council at which the proposition for the enlargement of the limits of the city will be taken up and considered by the city council; at which time and place any person having an interest in any property proposed to be included in said city limits, shall have a right to be present and be heard before the city council; and said notice shall specify and describe the territory that is proposed to be included in the limits of the city.

"SEC. 2. No city of the second class shall avail itself of the provisions of this act after the first day of May, and not unless the city council shall, within ten days from the time of the taking effect of this act, give notice by resolutions, passed by a majority of its council, of the intention of the city to avail itself of the provisions of this act; such notice to be by publication in some newspaper published in said city; said publication to be made within ten days from the time of the taking effect of this act: *Provided,* That this act shall not apply to cities of less than six thousand inhabitants."

Section 3 of this act, which is the last section, simply provides when the act shall take effect and how it shall be published. The act was approved March 3, 1875, and took effect March 7, 1875.

It is claimed by the plaintiffs below, defendants in error, that this act is unconstitutional and void, for the reason that it contravenes § 1, article 12, of the constitution of Kansas, which reads as follows:

"SECTION 1. The legislature shall pass no special act confer-

28—32 KAS.

ring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed."

It is admitted that § 1, article 12, of the constitution applies to cities, towns and villages, as well as to corporations of a private character, and that all such corporations, municipal as well as private, must be created, governed, regulated and controlled by general laws only, and cannot be created, governed, regulated or controlled, or increased or diminished, by any merely special act or acts. On the other hand, it is also admitted that a statute, in order to be valid, need not be so general in its terms or character as to have application to all the corporations of the state, public and private; but it is admitted that the various corporations coming within the provisions of said § 1, article 12, public as well as private, may be classified, and that valid acts be passed with reference to each particular class. Of course, however, there must be a limit to classification. The classes cannot be made so numerous that it would require a separate statute for each separate corporation; nor could any supposed class be so specifically named or defined that only one particular corporation could come within such name or definition; for in either such case the statute itself would be special and not general. It is admitted that cities may be divided into three classes, and possibly into six or more classes, or possibly into three classes and then each subdivided into two or more sub-classes. Up to the present time the cities of the state of Kansas have been divided into three classes, and three classes only, and only upon the basis of population. May they be divided into classes upon some other basis? For the purposes of this case, it is not necessary to answer this question; and yet we might remark as above intimated that they cannot be divided into classes simply by their names, or by some specific description amounting only to a name. They could not be designated as all the cities of the state of Kansas by the name of *Topeka*, or *Leavenworth*, or *Atchison*. (*City of Council Grove*, 20 Kas. 619, *et seq.*, and cases there cited.) And precisely the same result would follow if a description were used apparently general, but really so specific that it could not apply

to anything except to certain particular and existing things. (*The State, ex rel., v. Lawrence Bridge Co.*, 22 Kas. 438.)

Also, for the purposes of this case, we shall assume that the legislature may pass valid acts conferring corporate powers, where the acts themselves for the time being apply only to one municipal corporation; as, for instance, the various acts passed by the legislature of Kansas, from 1862 up to 1880, for the government of cities of the first class, and which acts really applied only to the single city of Leavenworth. But such acts, in order to be valid, must in their form be general, and they must also be such that in the ordinary course of things they might and probably would apply to other corporations. Take, for instance, the first-class-city act that was first enacted in this state: that act was for the government of all cities or municipal corporations of not less than 7,000 inhabitants. (Laws of 1862, ch. 46.) At the time of its passage it applied only to the single city of Leavenworth; but it was a general act in its form, theoretically applying to a class of cities, and theoretically enacted for all time to come; and if it had not been repealed or modified by subsequent legislation, it would now apply to nine different cities of the state of Kansas. Theoretically it was enacted for all cities which might in all the future attain to the population of 7,000, as well as for the city of Leavenworth, which then had that population. If, however, at the time of its passage, there had been no probability that any other city of the state of Kansas than Leavenworth would ever attain to or have a population of 7,000, the act, in all probability, would long ago have been declared unconstitutional and void, as being a special act conferring corporate powers, in violation of § 1, article 12 of the constitution. (*The State, ex rel., v. Hermann*, 75 Mo. 340; *Devine v. Comm'rs of Cook Co.*, 84 Ill. 590; *The State, ex rel., v. Hammer*, 42 N. J. L. [13 Vroom] 435; *The State, ex rel., v. Mitchell*, 31 Ohio St. 592; *Commonwealth, ex rel., v. Patton*, 88 Pa. St. 258, 260.)

The defendants in error, plaintiffs below, do not claim that the legislature cannot confer special corporate powers upon cor-

porations, but what they do claim is, that the legislature cannot, by a *special act,* confer corporate powers of any kind, general or special, upon corporations. The question, then, in the present case is, not whether the powers attempted to be conferred by the legislature in 1875 upon certain cities of the second class by said chapter 73 of the Laws of 1875, are special powers, or not; but the question is, whether the act attempting to confer such powers is a special act, or not. As before stated, the act is general in its form, but as before intimated, the constitutionality of the act is not to be determined by its form, but is to be determined by what in the ordinary course of things must necessarily be its operation and effect. If its operation and effect must necessarily be special, the act is special, whatever may be its form. If, on the other hand, the act has room within its terms to operate upon all of a class of things, present and prospective, and not merely upon one particular thing, or upon a particular class of things existing at the time of its passage, the act is general.

We now come to the more particular consideration of the act in controversy. Is it general, or is it special? It excludes from the scope and operation of its provisions all private corporations; all public corporations except cities; all cities of the first class; all cities of the third class; all cities of the second class except such as have a population of 6,000 and over; all cities not obtaining the benefit of the act within fifty-eight days after its passage; all cities not giving notice under the act, within fourteen days after its passage or within ten days after its taking effect; and, indeed, excluding all corporations of the state of Kansas, except three cities, to wit, Topeka, Lawrence, and Atchison; and it gives to these three cities only fourteen days after its passage within which to commence action under it, and only fifty-eight days after its passage within which to complete such action; and at the expiration of that time the law ceases to have operation and becomes ineffectual and defunct. At the time when this act was passed, there were just ten cities of the second class in the state of Kansas; and this act excluded from its operation all these

cities except the three cities above named—Topeka, Lawrence, and Atchison.

We have taken judicial notice, without formal proof, of some of the matters and things which we have stated; for courts, for the purpose of construing a constitution or a statute, may take judicial notice of everything which may affect the validity or meaning of such constitution or statute. (*Division of Howard County*, 15 Kas. 194; see also the cases above cited.) Courts may take judicial notice of the census returns, of the general history of the country, of what the members of the legislature ought to know when passing the statute which the courts are called upon to construe; and, indeed, of what all well-informed persons ought to know. And taking judicial notice of all these things, we can say without hesitation, that it was not possible for the said act of March 3, 1875, within the time within which it was to have force and effect, to apply to any corporation except the three cities of Topeka, Lawrence, and Atchison. It would apply to just those three cities—no more and no less; and any person who would take the trouble to inform himself with regard to the matter would know it. Is such an act a general act, or is it merely a special act? It is our opinion that it is merely a special act. It is true it applies to three cities, and not merely one; but the act declared unconstitutional in the case of *The City of Council Grove*, 20 Kas. 619, applied to four cities, and not merely one; and the act declared unconstitutional in the case of *The State, ex rel., v. Hammer*, 42 N. J. L. (13 Vroom) 435, applied to two cities, and not merely to one; and the act declared unconstitutional in the case of *The State, ex rel., v. The Lawrence Bridge Co.*, 22 Kas. 438, applied to several different corporations, and not merely to one; and the act declared unconstitutional in the case of *The State, ex rel., v. Hermann*, 75 Mo. 340, applied to a large number of notaries public, and not merely to one.

It is also true that the act in controversy does not specifically name the cities of Topeka, Lawrence, or Atchison; but it so describes them that there can be no possible question with regard to the application of the law to them, and to them only;

and this is substantially the same as naming them. In this respect this act is like all the acts held to be unconstitutional in all the various cases above cited, except the case of *The City of Council Grove*, 20 Kas. 619. The names are not given in such acts, but the corporations or persons to which the acts are intended to apply, are so specifically described that such corporations or persons may be definitely known. Under the authorities, an act may be special where it applies to many particular and existing persons or things, as well as where it applies to only one; and it may be special where it simply describes the particular persons or things so that they may be known, as well as where it gives their particular names or distinctive appellations.

The act in question we think is unconstitutional, and void; and this we think will require that the judgment of the court below be affirmed. It is true that counsel for both parties have raised several other questions; but after a careful consideration of all of them, we have arrived at the conclusion that no proper decision of any of them would require any different disposition of the case. The fact that the city of Topeka, about February 25, 1882, passed an ordinance defining the boundaries of the city and including "Ritchie's Addition" within such boundaries, did not, under § 8 of the first-class-city act, (Laws 1881, ch. 37,) or under any other statute, bring such so-called addition within the boundaries of the city of Topeka. Such so-called addition has never been subdivided into lots, blocks, streets and alleys by the proprietors thereof, with any intention that it should become a part of the city of Topeka. No map or plat of such so-called addition has ever been made, acknowledged or filed in the office of the register of deeds, by such proprietors, or with their consent or by their authority, (see Comp. Laws of 1879, ch. 78,) and such proprietors have never consented that such so-called addition should be made or should become a part of the city of Topeka. There has really nothing ever been done by the proprietors of such so-called addition which could be so "approved by the mayor and council," under said § 8, as to bring such so-called

addition within the boundaries of the city of Topeka. Any *approval* of what the proprietors have done would simply keep such so-called addition outside of the boundaries of the city, instead of bringing it within. Neither do we think that the plaintiffs, under the circumstances of this case, are estopped from maintaining their action. The claim of the city of Topeka that said so-called addition was within the boundaries of the city of Topeka has always been disputed and resisted by the proprietors of such so-called addition, and as late as April 8, 1876, one of such proprietors and the principal proprietor obtained a judgment against the city of Topeka, enjoining the city and others from collecting city taxes levied upon the property in such so-called addition, and declaring that such so-called addition was not within the boundaries of the city of Topeka. Considering this continuous dispute, and the notice that the city of Topeka has had of such dispute, we cannot say that the plaintiffs are estopped from maintaining their present action.

The judgment of the court below will be affirmed.

All the Justices concurring.