K. L. SIMPSON v. THE CITY OF KANSAS CITY et al.

1. GRADING STREETS — Assessments — Taxing District — No Subdivision. Where the charter of a city provides that the streets may be graded at the expense of the abutting land-owners, and the mayor and council are given power, in the language of the proviso to §4, chapter 99, Laws of 1887, (¶557, Gen. Stat. of 1889,) "to assess the cost of such improvement against the lots and parcels of land abutting on such streets so improved," the whole length of the street embraced in the petition of a majority of the resident property-owners and improved is one taxing district, and the part so improved is not to be divided into blocks and each block made liable for the improvement in front thereof.

2. STATUTE, Repealed. Section 14, chapter 63, Laws of 1886, (¶1077, Gen. Stat. of 1889,) concerning the grading of streets, avenues and alleys in consolidated cities, is repealed by §4, chapter 99, Laws of 1887, (¶557, Gen. Stat. of 1889.)

*Error from Wyandotte District Court.*

ACTION by *Simpson* against the *City of Kansas City*, the mayor and clerk thereof, and others, for a temporary injunction to restrain the collection of a certain tax for grading Reynolds avenue between Fifth street and Tenth street in said city. On November 16, 1889, the injunction was refused, and judgment for costs rendered for defendants. The plaintiff, *Simpson*, brings the case to this court. The material facts are stated in the opinion. The case was heard on April 3, 1890, and at the session of the court in May, 1890, it was decided, and there was filed herein an opinion, (syllabus and opinion by GREEN, C.,) recommending that the judgment of of the court below be affirmed. By the court, it was so ordered — all the justices concurring. The syllabus therein formulated and declared to be the law, is as follows:

"Where a petition for opening and grading a portion of a street is presented to the mayor and city council of a city of the first class, under the proviso to § 4 of chapter 99 of the Laws of 1887, and all the necessary steps are taken to have said street opened and graded, the mayor and city council may assess and apportion the cost of such improvement against the lots and parcels of land abutting on the improved portion of said street, and said assessment may be made on each block separately, as a taxing district."

On May 22, 1890, the plaintiff in error filed a motion for a rehearing, which was argued on June 6, following. On May 9, 1891, the court sustained the motion, and filed herein the new syllabus, *supra*, and the opinion, *infra*.

*Alden & McGrew*, and *W. S. Carroll*, for plaintiff in error.
*Hutchings & Keplinger*, for defendants in error.

Opinion by SIMPSON, C.: A motion for a rehearing was filed in this case, that, among other causes assigned for a reversal of the judgment below, alleges the following:

"It had escaped the attention of the court and counsel for plaintiff in error, until after the argument, that the amend-

ment contained in the Laws of 1887 was borrowed from a state whose supreme court has construed it, at least twice, as claimed by counsel for plaintiff in error."

It is also claimed that—

"The court inadvertently applied the principle of construction and power of legislative bodies as set forth in *Farrar v. City of St. Louis,* 80 Mo. 393, and cases referred to, while it will be apparent on a reconsideration that the court of the state from which the rule was borrowed shows that the rule of apportionment—the front foot—is provided by the law, and any change by the council makes the proceedings null and void."

Again, it is urged that—

"The court inadvertently overlooked the fact that the proviso and amendment of 1887, providing for grading on a petition, is to be construed independently, or as modifying all the previous laws on the same subject, as this court has decided in another case."

The petition for the grading of Reynolds avenue from Fifth street to Tenth street asked that the grading be done as provided in § 4 of the act of the legislature entitled "An act to amend §§ 8, 9, 11, 13, 14, etc., of an act entitled 'An act to incorporate and regulate cities of the first class, and to repeal all prior acts,' etc., approved March 5, 1887." It was stipulated and admitted on the hearing below, that the defendant city was formed by the consolidation of the former cities of Wyandotte, Kansas City, Kas., and Armourdale, in April, 1886, under the provisions of an act of the legislature of the state of Kansas, entitled "An act to provide for the consolidation of cities," approved February 11, 1886, and an act amendatory thereto, approved February 18, 1886. This petition to grade the street was filed in July, 1889, and at that time § 13, or ¶ 557, General Statutes of 1889, was in force, and read as follows:

"Sec. 13. For opening, widening, extending and grading any street, lane, alley, or avenue, and for doing all excavating and grading necessary for the same, and for all improvements of the squares and areas formed by the crossing of streets, and

for building culverts, bridges, viaducts, and all crossings of streets, alleys, and avenues, the cost or contract price thereof shall be paid out of the general-improvement fund, except as otherwise provided by law; and for all paving, macadamizing, curbing and guttering of the streets and alleys, the assessments shall be made for the full cost thereof on each block separately; on all lots and pieces of ground to the center of the block on either side of such street or avenue, the distance improved or to be improved, or on the lots or pieces of ground abutting on such alley, according to the assessed value of the lots or pieces of ground, without regard to the buildings or improvements thereon, which value shall be ascertained by three disinterested appraisers appointed by the mayor and council. It shall be the duty of said appraisers, within ten days after being notified of their appointment, to proceed to appraise such lots and pieces of land as may be designated by the council, after having taken and subscribed an oath to make a true and impartial appraisement, which appraisement shall be returned to the city council at its first meeting after the same shall have been completed. When said appraisement is returned, the mayor and council shall appoint a time for holding a special session, on some day to be fixed by them, to hear any complaint that may be made as to the valuation of any lot or piece of ground appraised as aforesaid, a notice of which special session shall be given by the mayor in the official paper of the city; and said mayor and council at said special session shall alter the valuation of any lot or piece of ground, if in their opinion the same has been appraised too high or too low: *Provided*, That in case a petition of a majority of the resident property-owners of a majority of the front feet on any street or part thereof shall petition the mayor and council to grade any street, and to grade and pave the intersections thereof, at the ·cost of the owners of the lands fronting upon the street described in the petition, and if such petition shall be ordered spread upon the journal of the council by a majority of the council elect, the mayor and council shall thereafter have power to assess the cost of such improvement against the lots and parcels of land abutting on such street so improved abutting property."

Paragraph 1077 was also, it is claimed, in force, and it reads as follows:

"The grading of all streets, avenues and alleys in said consolidated city, after such consolidation, shall be borne by the

property abutting thereon, and the assessments for the payment thereof shall be made on each block separately, in the same manner and with like effect as is provided by the law governing cities of the first class for paving, macadamizing, curbing and guttering of streets."

It is claimed by the city that the assessments for the grading were made under paragraph 1077, as this was a consolidated city; while it is claimed by the plaintiff in error that these assessments must be governed by the proviso contained in paragraph 557. The opinion heretofore rendered affirmed the judgment below by a construction of the proviso to paragraph 557, General Statutes of 1889; the theory of the decision being that the proviso did not expressly state a rule for apportionment, and, the one adopted being fair, just, and equitable, the court would not interfere. Under the authorities cited by counsel for plaintiff in error, we have serious doubts as to this proposition, and are strongly inclined to the belief that the proviso does fix a rule of apportionment. In the case of *City of Lexington v. McQuillan's Heirs*, 9 Dana, 513, the charter of the city gave the mayor and council authority to grade and macadamize streets and alleys of said city, at the cost and expense of the lot-owners fronting such streets or alleys, and required them to apportion the cost and expense of grading and macadamizing equally on the lot-holders. In the year 1836 the council graded and macadamized Main street, from the intersection of High to Maxwell streets, and distributed the cost thereof among the owners of lots on each side of the squares opposite to and adjoining the improvement thus made. McQuillan's heirs being owners of a lot on the corner of Main and High streets, the city council assessed against them, as their portion of the cost of the work, the sum of $509.92, that being one-half the amount charged for grading and paving opposite to their ground. This sum greatly exceeded the proportionate cost of the entire work done opposite to the lots of ground respectively in the same square, in consequence of a deep cut and a stone wall made opposite to the lot of McQuillan's heirs, and they resisted the

payment of the amount so assessed against them.   One of the questions discussed in the opinion is as to the rule of apportionment, and the court, by Chief Justice Robertson, says:

"It is manifest that this section of the charter prescribes a distribution of the entire cost of grading and paving a street to the whole extent of the square, among the owners of the ground in that square, according to some principle of equity, and that it did not intend to authorize the exaction from any such proprietor of the cost of construction opposite to and co-extensive with the front of his lot, when the cost of that portion of the work had exceeded the average charge upon the whole square.   And it seems to us, also, that the rule of equality prescribed by the legislature is the territorial extent, and not the value of each lot of ground.   This is the test of the authority given to a portion of the owners of the grounds in any one square to renovation of the street and sidewalks opposite such square at the cost of all the owners of ground in it.   Had the *ad valorem* principle been adopted, the owner of a comparatively small piece of ground, expensively improved, might control the other owners of ground in the same square, and impose on the majority a heavy burden against their consent, and possibly against their interest.   And as the extent of each proprietor's front on the street is the criterion of authority given to a part of them to control the whole and impose a common burden, it is altogether reasonable to infer that the aggregate responsibility should be, and was intended to be, distributed according to the same principle.   Then as the amount assessed against McQuillan's heirs is admitted to be much greater than their portion of the cost of the work opposite the whole square, distributed among the several owners of the ground therein, according to the rule prescribed by the statute, the circuit judge did not err in enjoining the coercive collection of the assessment as thus illegally made."

This is equivalent to saying that under the section of the charter the whole square is a taxing district, and the legal mode of assessment is to ascertain the cost of the improvement of the square, and apportion that cost equally to the lot-owners in proportion to the frontage of their respective lots on the square.

In the case of the *City of Louisville v. Hyatt*, 2 B. Mon. 177, it appears that § 9 of the charter of that city is the same as

§ 11 of the charter of the city of Lexington, construed in the case cited from 9 Dana. It is said in the Louisville case, in reference to that section —

"That, in distributing the burden of the entire cost of improvement, each lot-holder on the square divided by the graded street should be required to pay, not one-half the cost of the grade opposite his ground, but his adequate portion of the whole cost, estimated according to the relative extent of his lot on the street."

In the case of *The State, ex rel., v. City of Portage*, 2 Wis. 562, it will be seen that the charter of the city provided, that upon the application of two-thirds of the owners of lots on a street, the council should have power to have such street graded, and, for the purpose of defraying the cost, to levy and collect a special tax on the lots abutting on such street in proportion to the size or front of such lots, respectively. The city passed an ordinance requiring a certain street to be graded, and directed that each lot should be charged with the work done in front thereof. This ordinance the court held void, as being repugnant to the charter, Paine, J., saying:

"That all that part of the ordinance which provided that each lot or part of a lot should be chargeable with all the work done in front of it is repugnant to the provisions of the charter on that subject, can admit of no question. The charter evidently requires that, when any street is ordered to be graded, the section so ordered to be improved shall, for the purposes of taxation, be treated as a whole; and that when the whole amount of tax to be raised for that work is ascertained, it shall be equalized and divided among the various lots chargeable therefor, according to their front or size. This, it is obvious, is an entirely different principle of assessment from that which charges each lot with the entire expense of the improvement in front of it, and seems to avoid much of the inequality and injustice of the latter system. But it is the latter which is provided for in the ordinance under which the contract is let, and that part of it is of course void."

The cases of *Williams v. Mayor of Detroit*, 2 Mich. 560, and *Woodbridge v. City of Detroit*, 8 id. 274, construing provisions in the charter of the city of Detroit similar to the proviso we

are now considering, apart from their value as to the necessity of a just and reasonable rule for the apportionment of the cost of a public improvement, will be found in their general trend in harmony with the cases we have already cited. The general rule deduced from these earlier cases is, that where the grading of a street is to be paid for by the owners of lots abutting on the improved street, the whole length of the street so graded is to be considered as one taxing district, and the individual owner of a lot or lots so abutting is required to pay his fair proportion of the cost of the grading along the whole line of street improved; not the cost of grading of his lot or lots, or of the block in which his lot or lots may be situate, but his proportionate part of the cost of grading the entire distance improved.

This principle was distinctly recognized by this court in the case of *Parker v. Challiss*, 9 Kas. 155. The charter of the city of Atchison expressly provided that the city council should have power to make sidewalks, and "for making and repairing sidewalks the assessments shall be made on all lots or pieces of ground abutting on the improvement, according to the front foot thereof." In January, 1869, the city council by ordinance required the owners of lots on 17 different streets to build sidewalks. Challiss owned seven lots in a block fronting on Kansas avenue in said city. He resisted the collection of the special assessment made for the construction of the sidewalk in front of his lots, principally on the ground "that the city had no authority to make assessments for building sidewalks on said various streets upon all the lots on said streets fronting on said sidewalks, the power existing only to assess lots on each street for the sidewalks built thereon;" and this was the finding and judgment of the district court of Atchison county. It will be seen from this statement that the question was, whether the whole distance of all the streets ordered to be improved was the taxing district, or whether each street was a separate and distinct taxing district. Among the facts shown on the trial below was, that some of the streets on which sidewalks were ordered to be built were not graded,

and that portions of said sidewalk, by reason of the uneven condition of the streets, were necessarily built on posts, in some cases five feet high. On error to this court, it was said by BREWER, J.:

"The power to make sidewalks is here given absolutely and without limitation. When and upon what streets they shall be made is committed to the discretion of the mayor and council. . . . This discretion is not limited to a single street. They may sidewalk the whole city at once, and by a single contract. *But the right to assess the lots fronting on the improvement to pay for the same is coëxtensive with the power to make it.* . . . True, as urged, a sidewalk on one street may cost more than a sidewalk on another, and if both be united in one contract and one assessment, the owner of a lot on the latter street may have to pay more than if his street only was sidewalked. But the same is true not only of two streets, but also of two blocks on the same street, or of two lots in the same block. Still there is no injustice in apportioning the entire cost of a sidewalk upon the several lots fronting it. The value of a sidewalk depends greatly upon its extent."

It seems to the writer of this opinion that this case is a clear recognition of the principle that where the charter of a city provides that the streets may be graded at the expense of the abutting land-owners, and the council is given power, in the language of the proviso to § 4, chapter 99, Laws of 1887, "to assess the cost of such improvement against the lots and parcels of land abutting on such street so improved," the whole length of the street so improved is one taxing district, and that it is not to be divided into blocks, and each block made liable for the improvement in front thereof.

1. Grading streets—assessments—taxing district—no subdivision.

In the case of *City of Lawrence v. Killam*, 11 Kas. 499, it was conceded, in the briefs of counsel for both sides, "that the statute does not charge the property with the cost of building the walk in front of the lots, but the entire improvement —all the walk directed to be built—is to be assessed to the abutting property according to the front foot thereof;" and, with this concession, the question was whether the assessment

was illegal because it did not average a wide walk with a narrow one.

The case of *Hines v. City of Leavenworth*, 3 Kas. 186, is instructive, because of the change in the rule of apportionment during the progress of the improvement. In June, 1863, the city passed an ordinance providing for the improvement of streets, the third section of which provided: "For the purpose of making such improvements, a special tax shall be levied and collected upon adjacent real estate extending to the center of the block on either side of the improvements." While the work was in progress the legislature passed an act amending the act incorporating cities, by which several methods were prescribed for levying taxes for the improvement of streets, and, among others, a levy according to the area of the abutting property, and providing that this method should apply to improvements then being made. The city passed an ordinance in pursuance to the amended charter. The city engineer made another assessment of the cost of the work according to the area of the lots. Hines *et al.* attacked the validity of the assessments, they being owners of lots abutting on the improved streets, on the ground that the law under which the assessment was made was not applicable — that the law was unconstitutional, in that the rate of assessment authorized was not equal and uniform. The court, after affirming the constitutionality of the amended act and declaring its application to the improvements then in progress, says:

"The cost of the improvement must be assessed against the adjacent property; the charge must extend back to the middle of the block. It must be levied in one of three prescribed ways, *and in proportion to the cost of the whole improvement.*"

This is the only equitable construction that can be given to the statute under consideration. Special assessments are made upon the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of property peculiarly situated as regards the contemplated expenditure. (Cooley, Taxation, 606.) The principle is that —

"When certain persons are so placed as to have a common

interest among themselves, but in common with the rest of the community, laws may be justly made providing that under suitable and equitable regulations those common interests shall be managed so those who enjoy the benefits shall equally bear the burden." (Shaw, C. J., in *Wright v. Boston*, 9 Cush. 233.)

In *Palmer v. Stumph*, 29 Ind. 329, an assessment is spoken of as "being the adjustment of the shares of a contribution to be made by several towards a common object, according to the benefit received." In this state, assessments by benefits are made by appraisers, who value the property included in the district to be improved, and apportion the cost thereof in proportion to such valuation. This is a legislative requirement, and in the opinion of Judge Cooley, in his work on Taxation, is the most equal and just method. The legislature must determine over what territory the benefits must be diffused, because this is an undoubted and necessary power pertaining to all matters of taxation. The whole subject of taxing districts belongs to the legislature. (Cooley, Taxation, 640. See especially the case of *Sinton v. Ashbury*, 41 Cal. 525.) Property can only be assessed for local improvement on the principle of benefits received by the property from the construction of the work, and the benefits must be imposed on the property proportionately. (*Crawford v. The People*, 82 Ill. 557.) It is equally within the power of the legislature to prescribe one district over which the whole cost of the improvement shall be spread, or to make separate districts for the improvement along the several blocks, (*Creighton v. Scott*, 14 Ohio St. 438,) but when once prescribed, the levy must embrace all the property within the district, and to omit any would defeat the rule of apportionment. (*Hassan v. Rochester*, 67 N. Y. 528; *Matter of Churchill*, 82 id. 288; *People v. McCune*, 57 Cal. 153.)

Whatever rule of apportionment is adopted, it must be just and equitable, and this is a question for the courts. Judge Dillon, in his work on Municipal Corporations, states that there has been a diversity of opinion in the courts as to whether

a law compelling owners of lots to pay the entire cost of the improvement in front of their lots, instead of their proportion of the cost of the entire work, is constitutional; but the later adjudications seem to be, that where this rule is expressly commanded by the statute, it will be upheld. The learned author further says that in his judgment —

"The one right in principle, and most just in its practical workings, is that the assessment be made upon *all* the property specially benefited by the improvement, according to the exceptional benefit each lot or parcel of property actually and separately receives." (Dill., Mun. Corp., p. 934, § 761, subsec. 5.)

This is the sole object of our statute requiring each and every lot or parcel of ground to be appraised, excluding improvements thereon, so that each naked lot can bear its proper proportion of the cost made in improving the block in which it is situate, or the entire distance on the street improved. These cases establish the rule that, when the legislature establishes the extent of the taxing district, it cannot be lessened or divided by the council, but that body must act in strict compliance with the terms of the power delegated. If, under this proviso, the extent of the improved street is the taxing district, the council must not depart therefrom, and say that each block must be separately taxed for the improvement made in its front, as that is establishing a different rule for the apportionment of the cost of the work.

From these decisions it inevitably follows that, without some express legislative sanction, the true rule is, that the whole property to be improved constitutes a single taxing district, and the owner of a lot abutting on the improved street is required to pay that portion of the cost of the improvement that the valuation of his lot bears to the valuation of all the lots or parcels of ground subject to assessment in the taxing district. This rule is changed by the legislature in respect to paving, macadamizing, curbing and guttering streets in cities of the first class, and each block separately made a taxing district for these purposes; but, as we think, the rule applies to the proviso we are considering. An examination of § 4,

29—46 KAS.

ch. 99, Laws of 1887, will disclose that the first eight lines of the section provide for opening, widening, extending and grading streets and for other improvements, and for doing the work thereof, and that the cost thereof shall be paid out of the general-improvement fund, except as otherwise provided by law. And then follows the provision that for all paving, macadamizing, curbing and guttering of streets and alleys the assessments shall be made for the full cost thereof on each block separately. Then follow provisions for appraisement and notice, and hearing complaints of the appraisement. Then comes this proviso:

"That in case a petition of a majority of the resident property-owners of a majority of the front feet on any street or part thereof shall petition the mayor and council to grade any street, and to grade and pave the intersections thereof, at the cost of the owners of the lands fronting upon the street described in the petition, and if such petition shall be ordered spread upon the journal of the council by a majority of the council elect, the mayor and council shall thereafter have power to assess the cost of such improvement against the lots and parcels of land abutting on such street so improved abutting property."

The council has power originally, without petition from lot-owners, to order a street graded, and to pay for such improvement out of the general-improvement fund. If the council refuse or neglect to order a particular street or part of a street graded, the proviso gives the resident lot-owners who have a majority of the front feet on a street the right to have the street graded on certain conditions; but in such a case the cost of grading must be apportioned to the lots and parcels of land abutting on the graded street. This proviso, then, gave a right not granted by the body of the section. The council cannot pay the cost of paving, macadamizing, curbing and guttering streets out of the general-improvement fund, for the full cost of such an improvement must be assessed against each block separately thus improved. If this proviso intended that the grading of a part of a street petitioned for should be paid for in the same manner as paving,

macadamizing, curbing and guttering is, why does it contain the words "to assess the cost against the lots or parcels of land abutting on such street?" Or why did it not say, "by each block separately?" Because the intent of the legislature was to provide a different rule of apportionment from that made in the body of the section. We use the word "proviso" because it has crept into the case on the argument in the briefs; but this is not a proviso in the technical sense, but a separate and independent clause in the section, giving a right to petitioners not hereinbefore enjoyed. It seems to us to be an irresistible conclusion, coming to the mind instantly and without mental effort, on the first reading of the section, that the legislature had made separate and distinct rules of apportionment for the cost of paving streets and grading streets. We have endeavored by numerous citations to show that the true construction of the language used in the concluding clause of the section is, that the whole length of the street improved is the taxing district, and not each block separately. No construction of the proviso is admissible that will make it mean the same as the body of the section, because, in the nature of things, the proviso is intended to cover ground not within the balance of the section, or else there would be no reason for its existence. If the legislature intended that the cost of grading a street on the petition of the lot-owners whose property abutted, which each separate block should pay only for the grading in its immediate front, as in paving, macadamizing, curbing, and guttering, the word "grading" would have occurred in connection with the other improvements.. It is evident that a different rule of apportionment was provided for grading, and hence the legislature did establish a rule of apportionment, and the common council of the city had no discretion to exercise. Any other construction renders the concluding part of the section meaningless.

There must be special authority by law conferred upon the city council to make the assessments. The ordinary grant to municipal corporations to levy taxes for municipal purposes

will not justify other than ordinary taxes. The power to make assessments is exceptional, and must be strictly construed. (Cooley, Taxation, 609; *Hitchcock v. Galveston*, 96 U. S. 341.) The method of apportionment is a legislative question, and in every act providing for a local improvement a method of apportionment of the cost must be provided. We hold in this case that the legislature did fix the method of apportionment with reference to this particular improvement. But it is said that this amendment to the law made in 1887 has no application to this city, because, as appears from the record, it is a city formed by the consolidation of the cities of Kansas City, Wyandotte, and Armourdale, under the provisions of an act of the legislature that took effect on the 12th day of February, 1886, entitled "An act to provide for the consolidation of cities," commencing with ¶ 1064, Gen. Stat. of 1889. We have referred heretofore to ¶ 1077 of this act, and we are asked now to say that this assessment, having been made in conformity to that section, is good. This raises questions both as to the validity and application of the paragraph. It is a very doubtful question whether it was constitutional or not; not because of its special legislation, but for the reason that the subject-matter of the section does not seem to be embraced in the title to the act in which it is found. The legislature has power to consolidate cities, and to prescribe the rules and conditions upon which such consolidation shall take place, and every section of the act that can by fair inference be held to be an incident to the power to consolidate, or a condition of such consolidation, may be said to be fairly expressed by the title. But it is difficult for the ordinary mind to realize how a particular manner of apportioning the cost of grading streets in a consolidated city can be held to be a condition, or to be embraced within the meaning of the title of this act. There are no words used in this title that would suggest to the most acute mind that it contained provisions about grading streets. The strong inclination is to regard it as void. A clearer question is presented of its re-

2. Statute re-        peal.   We think it is repealed by the act we are
pealed.            considering that was passed at the session of the
legislature in 1887, and took effect on the 12th day of March;
not expressly repealed, but by necessary implication, because
of their antagonism, and because it is impossible to reconcile
them.   After these enumerated cities were consolidated and
formed Kansas City, Kas., that city become one of the first
class, and is to be governed in all respects by the laws regu-
lating cities of the first class.   Every act passed by the legis-
lature in respect to matters affecting cities of the first class
has the same application to that as to any other city of the
class in the state.   It cannot be maintained that the act pro-
viding for the consolidation of cities is in the nature of a con-
tract, whose obligations cannot be changed by legislation.   An
act of the legislature prescribing a different method and rule
of apportioning the cost of a local improvement than the rule
expressed in the act consolidating cities, so conflicting that the
two cannot be reconciled and one or the other must fall, must
necessarily have the effect to repeal the prior one, or that prior
one must be invested with some unusual attribute to obviate
that result.   We regard the act to provide for the consolida-
tion of cities as a general law of uniform operation, that oper-
ates on cities already in existence, and will operate on those
that grow in the future; that is subject to amendment or re-
peal like any other general law upon the statute book.   If a
later act of the legislature is in actual conflict with one of its
provisions or sections, that provision or section must go, for the
same reason that applies to all repeals by implication.   Hence
we say that this assessment by the separate block cannot be
upheld by a section of the act under which this city became a
consolidated one.   Unless there are strongly coercive reasons,
it ought not to be held that we have two statutes in force in
this state prescribing different methods for the apportionment
of the cost of a local improvement in a city of the first class;
and every consideration of public policy, as well as the uni-
formity of our legislation, demands the declaration that, when
the act of consolidation became complete, Kansas City was

subjected to all the provisions of our statute regulating and governing cities of the first class, as if created in the usual statutory method, and all amendments made to such laws apply to that municipality, as well as all others of that class.

It follows that the motion for rehearing is sustained, and the judgment of the court below reversed, for the sole reason that there is a rule of apportionment prescribed by the legislature making the whole distance on the street to be improved the taxing district. The petition and ordinance are valid, and probably the only thing required is a new apportionment and assessment of each lot or parcel of ground abutting on the graded street, so that it pays its proper proportion of the whole cost of the grading.

By the Court: It is so ordered.

All the Justices concurring.