THE STATE OF KANSAS, *on the relation of John N. Ives, Attorney General*, v. THE CITY OF KANSAS CITY, KANSAS, *et al.*

CONSTITUTIONAL LAW—*Consolidation of Cities.* Chapters 63 and 64 of the Laws of 1886, which provide for the consolidation of cities, and under which the cities of Wyandotte, Kansas City and Armourdale were consolidated as one city, are constitutional and valid, and the consolidation of the cities named is legal.

### Original Proceeding in Quo Warranto.

ACTION to dissolve the consolidation of the cities of Wyandotte, Kansas City, and Armourdale; heard on answer and demurrer to the answer. Demurrer overruled, and judgment for the defendants. All the material facts are stated in the opinion herein, handed down January 7, 1893.

*John N. Ives,* attorney general, for plaintiff; *Botsford & Williams, G. F. Ballingall, Thomas A. Pollock,* and *Gleed & Gleed,* of counsel:

The act entitled "An act to provide for the consolidation of cities," approved February 11, 1886, and the act supplemental thereto and amendatory thereof, approved February 18, 1886, under which the consolidation of the cities of Wyandotte, Kansas City, and Armourdale, Wyandotte county, Kansas, was attempted to be made into one city of the first

class, under the name of Kansas City, were and are unconstitutional and void, and the consolidation of said cities illegal and invalid, because —

1. Said act of February 11, 1886, is a special law conferring corporate powers, and is in violation of § 1, article 12, of the constitution of the state of Kansas.

2. Said act contravenes § 5 of the same article of the state constitution, which provides that "provision shall be made by general law for the organization of cities, towns, and villages." *City of Topeka v. Gillett*, 32 Kas. 434; *Gray v. Crockett*, 30 id. 143; *Atchison v. Bartholow*, 4 id. 124; *Van Ripper v. Parsons*, 40 N. J. L. 123; *The State v. Hammer*, 42 id. 435; *The State v. Herrmann*, 75 Mo. 340; *The State v. Mitchell*, 31 Ohio St. 592; *The People v. Haselwood*, 116 Ill. 319; *Commonwealth v. Patton*, 88 Pa. St. 258; *Nichols v. Walters*, 37 Minn. 264; Suth. Stat. Constr., §§ 117, 128, 129; Dill. Mun. Corp., §§ 45, 46.

3. Said act is also void because the subject of the act is not clearly expressed in its title, within the meaning of § 16 of article 2 of the constitution of the state, and the act contains more than one subject, in violation of said § 16 of article 2 of the constitution.

(*a*) The title does not indicate clearly the scope of the act. It is too general, is deceptive and misleading, and renders the whole act void. *Railway Co.'s Appeal*, 81 Pa. St. 91; *Town v. Sainer*, 59 Iowa, 26; *City of Eureka v. Davis*, 21 Kas. 580; *The State v. Barrett*, 27 id. 213.

(*b*) The provisions of said chapter 63 for the regulation and government of cities after consolidation, and especially the provisions of § 14 of said chapter, relative to grading of streets, avenues, and alleys, and of § 5, authorizing the mayor and council to change the name of any city after consolidation under said act, are not clearly expressed in the title of the act. *Simpson v. Kansas City*, 46 Kas. 438, 452; *Comm'rs of Sedgwick Co. v. Bailey*, 13 id. 610; *The State v. Barrett*, 27 id. 213; *The State, ex rel., v. Benefit Assn.*, 23 id. 499; *Shepherd*

*v. Helmers*, 23 id. 505; *The State v. Comm'rs of Haskell Co.*, 40 id. 65.

(*c*) The provisions of said chapter 63 for the government and regulation of cities after consolidation are inseparably connected in substance with the remainder of the act, and their unconstitutionality renders the whole act void. *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kas. 453, and cases cited.

(*d*) The act contains two subjects, and is therefore void. *Comm'rs of Sedgwick Co. v. Bailey*, 13 Kas. 610; *The State v. Barrett*, 27 id. 213; *Mo. Pac. Rly. Co. v. City of Wyandotte*, 44 id. 32; *The·State, ex rel., v. Comm'rs of Haskell Co.*, 40 id. 65; *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 id. 453.

4. Said chapter 63 does not have a uniform operation throughout the state, and contravenes § 17, article 2, of the constitution of the state.

(*a*) The exception contained in the last clause of § 1 of said chapter 63, that "such cities shall be consolidated and become one city, and be governed and regulated by the laws relating to cities of the first class, except as to the matters provided for in this act," violates said § 17 of article 2 of the constitution, and is void. *Simpson v. Kansas City*, 46 Kas.· 453; *Darling v. Rodgers*, 7 id. 599; *Robinson v. Perry*, 17 id. 248; *Gray v. Crockett*, 30 id. 138.

(*b*) The unconstitutionality of the excepting clause above stated, and of the provisions introduced into the act under it, especially § 14 and the proviso of § 5, renders the whole act void. *Commonwealth v. Potts*, 79 Pa. St. 164; *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kas. 453.

5. The consolidation of the cities of Wyandotte, Kansas City and Armourdale was unconstitutional, illegal, and void, because, at the time said consolidation was made, the city of Armourdale·was separated from the city of Wyandotte and Kansas City by an intervening strip of land, not included within the limits of either of said three original cities, or of said consolidated city, and which was a part of the municipal

township of Wyandotte. Constitution, art. 12, § 5; *Smith v. Sherry*, 50 Wis. 210; *Union Pacific Rly. Co. v. Kansas City*, 42 Kas. 497; *Prouty v. Stover*, 11 id. 235; *In re Holcomb*, 21 id. 635; *Beach v. Leahy*, 11 id. 23.

*L. C. True*, city attorney, and *Winfield Freeman*, city coun-
selor, for defendants; *John C. Foster, McGrew & Watson*,
and *Silas Porter*, of counsel:

We do not dissent from the legal proposition stated, that a special act conferring corporate powers, in this state, or in other states with like constitutional provisions, cannot be up-held. Our contention is, that the act in question is not special. If it is, then we agree with our opponents that it is unconstitutional. As it does not appear on the face of the answer that the act pleaded is special, the demurrer must be overruled. Gen. Stat. of 1889, ¶ 4172; *Mayberry v. Kelly*, 1 Kas. 116; Nash, Pl. & Pr. (4th ed.), p. 147.

That the law is special in its application (if that is a fact), cannot be considered at this time. Nor is the rule changed by the fact that the court may take judicial notice of every-thing which may affect the validity of the statute. The time to take judicial notice of facts is when the case is for trial on the facts, and not on issues of law.

But if the court should think it proper to consider on de-murrer such facts as it may take judicial notice of, then we contend that the act in question is not special legislation, under the rules laid down by this court, as follows: "It is not nec-essary that a law should operate upon all cities of the state to be constitutional. If it is general and uniform throughout the state, operating upon all of a certain class (as this law does), or upon all who are brought within the relations and circumstances provided in the act (as this law does), it is not obnoxious to the limitation against special legislation." *The State v. Hunter*, 38 Kas. 590. See, also, *City of Topeka v. Gillett*, 32 Kas. 436; *Van Ripper v. Parsons*, 40 N. J. L. 123:

The subject of the act in question is clearly expressed in its title. Suth. Stat. Const., § 88; Dill. Mun. Corp., § 28;.

*People v. Mahoney*, 13 Mich. 494; *Davis v. The State*, 61 Am. Dec. (Md.) 331, and notes, 338; *Insurance Co. v. Mayor*, 3 N. Y. 239; *The State v. County Judge*, 2 Iowa, 280; *Weyand v. Stover*, 35 Kas. 551; *In re Wood*, 34 id. 649; *John v. Reaser*, 31 id. 406; *The State v. Barrett*, 27 id. 213, 218.

Does the act contain more than one subject? The subject being the consolidation of cities, and the details not being required to be expressed in the title, we have to look to the body of the act for them. If we there find some matter provided for, not expressed in or germane to the title, and in no way connected with the subject of the act, such matter must be expunged, but the remainder of the act may stand. Cooley, Const. Lim., p. 177; *Turner v. Comm'rs of Woodson Co.*, 27 Kas. 314; *Berry v. Railroad Co.*, 20 Am. Rep. (Md.) 69; *Lottery Co. v. Richoux*, 8 id. 602; *Gayle v. County Court*, 83 Ky. 161.

The parts of the act complained of, to wit, the provision for government after consolidation, the provision for change of name, the provision for grading streets, are, we think, clearly germane to the title — "Consolidation of cities." If so, they are properly within the act; if not, they are unconstitutional and void. The name given the city by the governor was for the provisional government, just to answer until the mayor and council might determine what name would be preferable. This was clearly authorized by the decision of this court in the case of *The State, ex rel., v. Comm'rs of Haskell Co.*, 40 Kas. 65.

The part of the act with reference to consolidation is complete and perfect of itself, and can stand alone. It is in no way dependent upon the grading, or the government, or the change of name. See *Smith v. Mayor, etc.*, 45 N. W. Rep. (Mich.) 964. "Constitutional and unconstitutional provisions may even be contained in the same section of law, and yet be perfectly distinct and separable, so that the former may stand, though the latter fall." 3 Am. & Eng. Encyc. of Law, p. 677, and cases there cited. "Part of the law may be held good and part bad, if it is separable." *C. B. U. P.*

*Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 Kas. 353. See, also, *Nichols v. Walter*, 37 Minn. 270; *The State v. Ellet*, 21 Am. Rep. 782, and numerous cases cited in notes.

Counsel for plaintiff say that the consolidation of Kansas City, Armourdale and Wyandotte was unconstitutional, illegal, and void, because there was an intervening strip of land (750 feet wide) not included in either of the original cities or the consolidated city. This is not a correct statement under the pleadings, or in fact; and if it were, it could have no effect in this case. The legislature may shape the political subdivisions of the state at its pleasure, unless restricted by some constitutional provision. Const., art. 12, § 5; Dill. Mun. Corp. (3d ed.), §§ 54, 126, and cases there cited. See, also, *Commonwealth v. Cullen*, 53 Am. Dec. 450, and numerous cases there cited in notes, p. 471.

If the act be held good so far as it provides for consolidation, then, by the sovereign will of the legislature, it is determined by the act itself that cities may be consolidated if they are not more than three-fourths of a mile apart. It provides for the consolidation of adjacent cities, and defines adjacent to be within three-fourths of a mile. See § 1 of the act. If we did not have this legislative determination of the meaning of "adjacent," we would be within its purview anyway. While contiguous means adjoining, adjacent means in the vicinity of. "Adjacent, strictly speaking, does not mean adjoining; it means that it shall be in the neighborhood, or convenient, or near to." *Henderson v. Long*, 1 Cooke (Tenn.), 128; *Mayor, etc., v. Hart*, 16 Hun, 380; *United States v. N. Pac. Rld. Co.*, 29 Alb. L. J. 24.

The opinion of the court was delivered by

JOHNSTON, J.: On March 6, 1886, Gov. John A. Martin issued a proclamation declaring a consolidation of the cities of Wyandotte, Kansas City and Armourdale as one city of the first class, under the name of Kansas City. This action was taken by him as govern⋯ in pursuance of the authority of "An act to provide for the consolidation of cities," and

another which is amendatory thereof, being chapters 63 and 64 of the Laws of 1886, and also upon the certificate of the county clerk of Wyandotte county, stating that no one of the cities named was a city of the first class; that they were adjacent to each other, not more than three-fourths of a mile apart, and together had attained an aggregate population of more than 15,000. Since that time these cities have been treated as one municipality and conducted under a single government, and the validity of the consolidation was not challenged until December 3, 1891. On that day, the attorney general, in the name of the state, brought an original action in this court against the city and its officers, in the nature of *quo warranto*, to dissolve the consolidation; and the specific ground alleged is, that the laws under which it was effected were unconstitutional and void. Answers were filed in behalf of the consolidated city and its officers, stating, in substance, that prior to the consolidation Kansas City, Kas., and Wyandotte were cities of the second class, while the city of Armourdale was a city of the third class, and together had a population of more than 15,000 inhabitants; that the city of Armourdale was not more than three-fourths of a mile from the cities of Kansas City and Wyandotte. It recites the certificate of the county clerk and the action of the governor in the consolidation of the cities, and that the first officers were elected and the consolidation completed. It is alleged that the three cities comprising the consolidation were adjacent to each other:

"That the separating line between old Kansas City and old Wyandotte was the middle of the Kansas river, from the point where the Kansas river empties into the Missouri, which line ran up the Kansas river to a point where it intersects the boundary of the city of Armourdale; that the city of Armourdale, previous to the consolidation, was adjacent to the city of Wyandotte on the south, the platted territory of the city of Wyandotte on the south boundary being within 750 feet of the platted territory of the city of Armourdale on the north boundary thereof, the intervening space being occupied by the tracks and right-of-way of the Union Pacific

Railway Company; that since the consolidation of said city
as aforesaid, numerous additions have from time to time been
added, by ordinances duly enacted and approved; that the ter-
ritory comprising said additions amounts to about one-third
of the present territory included within the boundary lines
of said city."

It is further alleged, that since the consolidation the whole
territory comprising the same was divided into wards, and
that, in each of the wards, councilmen and members of the
board of education had been elected, and all of the qualified
electors had participated in said election; that the city of Ar-
mourdale had been constituted the sixth ward; that the city
had expended in public improvements in that ward alone the
sum of $354,490.74, for which special-improvement bonds
had been issued by the consolidated city, and that there had
been expended, for school sites and buildings in the sixth
ward, the sum of $27,000. It appears to be claimed that the
opposition to the consolidation comes mostly from residents
of the sixth ward. It is further alleged, that since the con-
solidation the city has been recognized as a city of the first
class by the United States government, by the courts of
Wyandotte county, the supreme court of the state, by the
state legislature, and by the governor and state officers of
Kansas, and that from the time of the consolidation the sev-
eral cities composing the same had voluntarily surrendered
their respective local governments, and had acquiesced in the
consolidation. It is finally averred, that the dissolution of
the consolidation would cause irreparable injury to the peo-
ple of the city, and also to the persons who own and hold the
bonds and contracts of the city, and also to various persons
and corporations who have received franchises for water,
light and railways within the city; that it would work con-
fusion in the police regulation and control of the territory
included in the city, and would give rise to much litigation
both as to the contracts and debts outstanding, as well as in
the matter of taxation, both past and future; and the defend-
ants insist that, by reason of the premises, the state is es-

topped from maintaining this action. A general demurrer to the answer was filed by the state, and upon that answer and the demurrer the case is submitted to this court.

The result of the controversy depends upon the validity of the statutes under which the consolidation was effected. Several grounds of invalidity are asserted, but the principal ground is that the acts confer corporate power, and, being of a special or local nature, they are repugnant to § 1 of article 12 of the state constitution, which forbids the legislature to pass any special act conferring corporate powers. That corporate power is conferred by the legislature, no one can deny; but is it special and local in its application, within the meaning of the constitution? The statutes attacked are chapters 63 and 64 of the laws of 1886, and it is contended that the first section of chapter 63 discloses the local and special character of the legislation. It reads as follows:

"SECTION 1. Whenever two or more cities, neither of which is a ·city of the first class, lying adjacent to each other, and not more than three-fourths of one mile apart, have attained, or shall hereafter attain, an aggregate population of 15,000 or upwards, such cities shall be consolidated and become one city, and be governed and regulated by the laws relating to cities of the first class, except as to matters provided for in this act."

All of the provisions of the acts relate to the consolidation, and prescribe the various steps to be taken in completing it, except, possibly, one in relation to the grading of streets, the validity of which has been questioned. (*Simpson v. Kansas City*, 46 Kas. 438.) The statute is general in form and prospective in its application, and upon its face it would appear to operate on all communities which came within its provisions for all time to come. The mere fact that it is general in form, however, will not save the statute, if its operation and effect are necessarily local and special. (*City of Topeka v. Gillett*, 32 Kas. 431.) In the case last cited, the following rule with reference to what constitutes general legislation, and which would be upheld, was stated: "If the act has room

within its terms to operate upon all of a class of things, present and prospective, and not merely upon one particular thing, or upon a particular class of things existing at the time of its passage, the act is general." In *The State v. Hunter*, 38 Kas. 590, it is said:

"It is not necessary that a law should operate upon all cities of the state to be constitutional. If it is general and uniform throughout the state, operating upon all of a certain class, or upon all who are brought within the relations and circumstances provided in the act, it is not obnoxious to the limitations against special legislation."

The principle of classification in legislation for cities has been approved in this court and is conceded by counsel for plaintiff. Heretofore, it has been based on population only, but it has been generally recognized that other classifications might be made without offending the constitution. (*City of Topeka v. Gillett*, supra.) It was said in *The State v. Hunter*, supra, that —

"It belongs to the legislature to make the classification, and while it cannot so classify them as to make the law special in its application and results, yet many classes may properly be made. It need not be restricted to the population of the municipality, but it would seem that it might be based on the conduct or condition of the people resident therein."

The cities of Kansas have been arranged in three classes. When it is found that a city has 15,000 inhabitants, it becomes a city of the first class; those that have less than 15,000 and more than 2,000 are placed in the second class; and all incorporated municipalities not having more than 2,000 fall within the third class. As cities increase in population, they advance from one class to another by a simple procedure, when they adopt a different form of city government, and are made subject to a different code of municipal laws. The statute in question provides another method for organizing cities of the first class, and for advancing adjacent cities of the lower classes to the first class. No previous law was adequate for this purpose. Is the classification fair, and the

distinction from other laws substantial and necessary? Can it have general application upon all municipalities which naturally come within its provisions? The act simply provides for the consolidation of adjacent cities of the lower classes into one of the first class. We are of opinion that the classification is not an unnatural one, and that the distinction is substantial and reasonable. In communities where only a few inhabitants reside, but few rules and regulations are required; but those which would be sufficient for them would be wholly inadequate for a densely-populated municipality; and hence the laws provided for cities of the first class differ materially from those provided for the lower classes. Cities which are adjacent to each other, of the lower grade, that, in the nature of things, cannot hope to reach the population which would bring them into the first class, are permitted by this act to unite, and thus obtain all the conveniences and benefits of the laws enacted for first-class cities. Consolidation, in such cases, would seem to be in the interest of economy and convenience. The maintaining of several independent, and perhaps conflicting, municipal organizations that are near together, and which, all together, naturally constitute but one community, is unnecessary, inconvenient, and expensive. United, the expenses of government may be greatly reduced, better police control can be had, streets and sewers may be built more advantageously and economically, water and light can be distributed at much less expense; and all these advantages and conveniences can be enjoyed by a greater number of people than can obtain them under several municipal organizations. As there was no law in existence under which such organizations could consolidate, it would seem that there were substantial and reasonable grounds for bringing such municipalities into a single city government. Of course, a law cannot be enacted, even for beneficial purposes, which is so restricted and local in its application as to be special. It is objected that this law is special in that it applies only to cities of the second and third classes, and excludes from its operation those of the first class. But this objection

is not good.   As has been seen, it is not necessary that an act shall apply to all cities in order to be valid.   The purpose of this act was to create cities of the first class from cities of other classes which needed, but could not otherwise obtain, first-class-city government.   There is no reason nor necessity for the ' application of the law to cities already in that class, and the fact that provision was being made for the creation of cities of that class no doubt determined the limitation of population at 15,000 people.

It is further contended, that the law is special because at the time of its passage it was only applicable to three cities, which have taken advantage of its provisions to consolidate into the defendant city.   It is true that no other cities than those named have taken advantage of the provisions of this act, and it is probably true that no other cities similarly situated have at present the requisite population which would enable them to consolidate.   The act, however, in form appears to be designed for the whole state, and to embrace all cities that come within the specified class.   The fact that only one group of cities could have consolidated under the statute at the time it was enacted does not condemn it.   If the classification is proper, and the legislation is such as admits of the entry of all cities of like condition into that class, it is not invalid, although there may be at the time only one group of cities that comes within the class.   If the provisions are such that other cities may enter the class, and in the nature of things probably will enter the class and come within the provisions of the statute, it may be regarded as a general law.   (*City of Topeka v. Gillett*, supra; *Bumsted v. Govern*, 47 N. J. L. 372; *Fellows v. Walker*, 39 Fed. Rep. 651; *The State v. Hudson*, 44 Ohio St. 137.)

It is well known that in mining and manufacturing districts towns spring up which are near together, and where the conditions are favorable for growth and prosperity they soon develop into cities of the lower classes.   Our attention has been called to groups of cities in other portions of the state which give promise that some of them at least will soon

attain the requisite population to avail themselves of the provisions of this act. Rosedale and Argentine, in Wyandotte county; Empire City and Galena, in Cherokee county; Hutchinson and South Hutchinson, in Reno county; Coffeyville and Parker, in Montgomery county; and Strong City and Cottonwood Falls, in Chase county, are cited as examples of young and growing cities to which the law may be fairly expected to apply at some early time. The first-class-city act only applied to a single city for many years, but it was general in form and theory, and there was good reason to anticipate that other cities would come within the provisions of the act in the future. Although the act applied to but one city for a number of years, it was not held to be void, and the result anticipated has been realized, as there are now several other cities that fall within that class. The experiences of the past would fairly justify the expectation that some of the adjacent cities now in existence in different parts of the state will attain a sufficient population to consolidate under this act. This statute is very unlike the one condemned in *City of Topeka v. Gillett,* supra. That act was hampered with so many restrictions that it had no general application, and manifestly was not intended to have a general and uniform application throughout the state. It excluded all cities of the first and third classes, and, in fact, most of the cities of the second class. Indeed, it could not apply to any cities except Topeka, Lawrence, and Atchison, and not to them except for a few days after its passage. It could only apply to such of the three cities named as took certain steps within 14 days after the law was enacted, and had completed the action within 58 days. After that time, the law became ineffectual and defunct. The consolidation act may have operation for all future time and throughout the entire state; and hence the decision of *City of Topeka v. Gillett,* supra, condemning special legislation, is not controlling here. The validity of this act was brought to the attention of the court in *Simpson v. Kansas City,* 46 Kas. 453, where the right of the legislature to provide for the consolidation of cities was declared;

and it was said that "We regard the act to provide for the consolidation of cities as a general law of uniform operation, that operates on the cities already in existence, and will operate on those that grow in the future." The objection, therefore, that the act is invalid by reason of being special and local, cannot be sustained.

It is claimed also that the law is limited by the exceptions mentioned in the first section; but it appears that every provision relates to and is intended to effect consolidation except the fourteenth section, which relates to the grading of streets. As intimated in *Simpson v. Kansas City*, supra, this section is not fairly embraced within the title of the act, and is unconstitutional. When the consolidation has been completed, the laws relating to cities of the first class must control; and, as § 14 is an apparent attempt to provide a rule for the grading of streets after the consolidation has been effected, it does not come within the title of the act, and cannot be sustained. This section, however, is distinct and severable from the remainder of the act, and its invalidity will not render the whole statute void. (*Turner v. Comm'rs of Woodson Co.*, 27 Kas. 314; *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, 28 id. 453; *Berry v. Railroad Co.*, 20 Am. Rep. 69; *Smith v. Mayor, etc.*, 45 N. W. Rep. [Mich.] 964; Cooley, Const. Lim. 177; 3 Am. & Eng. Encyc. of Law, 677.)

It is asserted that the act violates § 16 of article 2 of the constitution, which provides that "No bill shall contain more than one subject, which shall be clearly expressed in the title." The title of the act is: "An act to provide for the consolidation of cities." We think, under the numerous decisions of this court, that the title, although general, fairly indicates the scope of the act, and that when § 14 is eliminated from it, no objection can be fairly urged against the title. (*The State v. Barrett*, 27 Kas. 213; *Comm'rs of Cherokee Co. v. The State*, 36 id. 337; *The State v. Comm'rs of Haskell Co.*, 40 id. 65; *Mo. Pac. Rly. Co. v. Merrill*, 40 id. 404; *The State, ex rel., v. Sanders*, 42 id. 228.)

There is a further contention that the consolidation is illegal because Armourdale was not contiguous to the other two cities, but was separated by an intervening strip of land. It is alleged in the answer that the cities consolidated were adjacent to each other, and that the boundary line of Wyandotte and Kansas City intersected the boundary of Armourdale, but that there was a strip of land about 750 feet wide occupied as a right-of-way of a railroad between Wyandotte and Armourdale, and that since the consolidation numerous additions to the cities had been made. It is not necessary, under the terms of the act, that the cities should have actually joined each other at the time of the consolidation; it is enough if they were "adjacent;" and that term has been defined as lying near to, but not actually touching. (Webster's Unabridged Dictionary; *Henderson v. Long*, 1 Cooke, 128; *Mayor, etc., v. Hart*, 16 Hun, 380; *United States v. Railroad Co.*, 29 Alb. L. J. 24.) We have, however, a legislative definition of the term in the act itself, where it provides that cities not more than three-fourths of a mile apart are to be deemed adjacent to each other. We have no constitutional provision prescribing a rule with reference to the territorial boundaries of cities, and in the absence of constitutional limitation, express or implied, the power of the legislature in respect to territorial limits is supreme and transcendent. (Dill. Mun. Corp., §§ 54, 183.) We have other statutory provisions which give full authority to annex contiguous territory, with or without the consent of the persons residing on such territory, and there is conferred upon the mayor jurisdiction and authority over all places within five miles of the corporate limits of the city for the enforcement of certain police regulations. In view of these provisions, it would seem that no serious objection could be urged against the consolidation because of the intervening strip between Wyandotte and Armourdale. Whenever a statute can be so construed as to avoid a conflict with the constitution, such construction should be adopted if possible; and, keeping in mind this

Consolidation of cities—valid statute.

rule, we have reached the conclusion that the statute in question must be held valid and the consolidation legal. The demurrer to the answers of the defendants will therefore be overruled, and judgment given in their favor.

All the Justices concurring.